### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERNEST E. LIGGETT                                    Civil Action No. 14-1086

          Plaintiff,

v.                                                   United States Magistrate Judge
                                                     Maureen P. Kelly
THE BOROUGH OF BROWNSVILLE,
et al.
                                                     **JURY TRIAL DEMANDED.**
          Defendants.

### BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
### PURSUANT TO FED.R.CIV.P. 12(b)(5) AND 12(b)(6)

Defendants, Borough of Brownsville; Brownsville Borough Code Enforcement Officer, Edward E. Nicholson; Brownsville Borough Mayor, Lester J. Ward; Borough of Brownsville Council Members Jack J. Lawver, Thomas Bush, John T. Hosler, James S. Lawver, Charles B.  Perkins, Ross T. Swords, Jr., and Tracy Zivkovich (collectively, "Moving Defendants"), through their attorneys, Thomas, Thomas & Hafer, LLP, respectfully submit this Brief in Support of Motion to Dismiss Amended Complaint:

### I.    PROCEDURAL HISTORY

Plaintiff initiated this civil action in state court by Praecipe for Writ of Summons filed on March 3, 2014.  In a 5-count, 12-page/62-paragraph Complaint thereafter filed in the state court, Plaintiff purported to assert claims under 42 U.S.C. § 1983 (First Amendment, due process, and conspiracy to violate civil rights), Pennsylvania common law (for "manipulation of Magisterial District Court" and "prevention of obstruction of justice"), and the Pennsylvania Constitution.  Moving Defendants removed the action to this Court and filed a Motion to Dismiss all claims on the basis of judicial estoppel as a result of Plaintiff's failure to disclose the claims in a bankruptcy petition he filed after the claims accrued, and on the alternative grounds that the claims are time-barred and/or

1

otherwise legally insufficient, and that Plaintiff has failed to effect service upon Moving Defendants.

On September 15, 2014, Plaintiff filed an Amended Complaint which is 62 pages in length, and consists of more than 220 numbered paragraphs, many of which set forth multiple facts and/or include multiple subparagraphs.  Approximately 46 of the 62 pages of the Amended Complaint are spent alleging, in exhaustive detail, events which occurred between 1991 and 2010 (*i.e.*, outside the applicable statutes of limitations), including extensive allegations regarding the acts of third parties, and quotes from newspaper articles and editorials.

This Court's docket also reflects no attempt by Plaintiff, in the time since Moving Defendants filed their prior Motion to Dismiss raising insufficient service of process, to effect service upon Moving Defendants.   In addition to failing to serve the existing Defendants, Plaintiff has added to the caption of the Amended Complaint two new parties who were not previously named as Defendants (Norma J. Ryan and Davis & Davis Attorneys at Law).[1]

The Amended Complaint asserts 4 counts, consisting of (1) alleged violation of Plaintiff's Equal Protection rights (presumably under the U.S. Constitution, pursuant to 42 U.S.C. § 1983); (2) a count entitled "42 U.S.C. § 1983," which appears to assert a "taking" claim and/or a substantive due process claim; (3) a claim for liability under RICO's civil

---

[1]  Moving Defendants also note that the Amended Complaint names "Tracy Sheehan Zivkovich" as a Defendant.   Plaintiff's Praecipe for Writ of Summons in the state court named "Tracy Zivkovich" as a Defendant, but her name was omitted from the caption of the Complaint that Plaintiff thereafter filed in the state court, which the Defendants removed to this Court.  However, due to the inclusion of Ms. Zivkovich in the caption of the Praecipe for Writ of Summons, undersigned counsel entered an appearance on her behalf (and assumes that Plaintiff's alternate designations of "Tracy Zivkovich" and "Tracy Sheehan Zivkovich" are intended to refer to the same person).   Ms. Zivkovich is therefore one of the Moving Defendants on whose behalf the arguments set forth herein are asserted.

provisions, including alleged "Conspiracy To Commit Civil RICO"; and (4) a claim of unjust enrichment (presumably under Pennsylvania common law).

In addition to the Amended Complaint's flagrant violation of Rule 8's "short and plain statement" standard, Plaintiff's inclusion of the additional 50 pages of allegations does nothing to cure the judicial estoppel and statute of limitations issues or the other legal insufficiencies of the claims asserted in the original Complaint, as addressed in Moving Defendants' prior Motion to Dismiss. For the reasons fully set forth below, Moving Defendants respectfully submit that the Amended Complaint should be dismissed with prejudice.

## II.   FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT

As noted above, the Amended Complaint sets forth factual allegations dating back more than two decades, to 1991, when Plaintiff purportedly began plans to redevelop the downtown commercial district of the Borough of Brownsville (hereinafter the "Borough"). In connection with those plans, Plaintiff, "individually and through corporate entities," allegedly purchased a total of 127 properties in the Borough, which he allegedly maintained in accordance with the Borough's Building Code from 1992 through 2002. (Document 12, ¶¶ 12-14, 202, 204). The Amended Complaint also indicates that some of these properties were owned jointly by Plaintiff and Marilyn Liggett. *Id.*, ¶¶ 201, 203.

The Amended Complaint then proceeds to set forth, in great detail, the alleged history of Plaintiff's efforts to implement his plans to redevelop the above-referenced properties. Such allegations consist largely of Plaintiff's alleged communications and interactions with individuals and entities who are not parties to this action, including but not limited to representatives of the Redevelopment Authority of the County of Fayette ("RACF"), representatives of the governor's office, state legislators, engineers,

contractors, attorneys, financial institutions, the Borough police, and former employees and elected officials of the Borough.  Plaintiff also references alleged interactions with certain Moving Defendants which occurred as remotely as 2001.  *See, e.g.*, Document 12, ¶¶ 47-48.  Additionally, the Amended Complaint is replete with numerous quotations of news articles, opinion pieces, and commentary by various politicians and other public figures who are not parties to the instant civil action.  *See, e.g.*, Document 12, ¶¶ 18, 22.a.-22.g., 42, 73, 75, 95, 99, 105, 109, 131, 135, 146, 153, 165, 167, 182.

According to the Amended Complaint, 145 of a total of 161 property-related citations issued between 2005 and 2009 were directed to Plaintiff.  Plaintiff was found guilty of 82 of those citations, for which he allegedly incurred more than $175,000.00 in fines.  (Document 12, ¶ 179).  Plaintiff alleges that these citations issued by the Borough between 2005 and June 2009 were issued pursuant to "expired property maintenance codes," and by a person who was not a "State-Certified Building Code Official" appointed pursuant to the International Property Maintenance Code.  *Id.*, ¶¶ 187-88.  It is not until page 50/paragraph 190 of the Amended Complaint, that Plaintiff finally alleges events which occurred within the current decade, as referenced below.  (Again, however, many of these events involve persons and entities who are not parties to the instant action and/or are time-barred.)

On or about May 18, 2009, RACF (a County entity) passed a resolution designating Plaintiff's properties as "blighted," followed by a condemnation resolution.  *Id.*, ¶ 185.  Pursuant to Declarations of Taking thereafter filed by RACF on or about June 3, 2009, RACF took title, pursuant to 26 Pa.Cons.Stat. § 302(a), to the 22 properties owned by Plaintiff in the Borough's downtown commercial district..  *Id.*, ¶ 186.  Thereafter, on July 12, 2010, Plaintiff's remaining properties in the Borough were offered for sale at "a

special Fayette County Upset Tax Sale," and because there were no bids, legal title to those properties transferred to the Fayette County Tax Claim Bureau.  *Id.*, ¶ 194.

Plaintiff alleges that Defendant Nicholson, the Borough's Code Enforcement Officer, filed multiple citations against him on March 8, 2010; September 15, 2010; and November 9, 2010, all of which were allegedly dismissed on or about December 15, 2010.  *Id.*, ¶¶ 191, 198.   According to Plaintiff, the Magisterial District Judge had previously instructed the Borough, on two occasions (in August 2009 and December 2009), that it was to file new notices of violation for past violations that had not been corrected.  *Id.*, ¶ 189.

Defendant Nicholson subsequently filed a new set of citations against Plaintiff on May 11, 2011, and allegedly issued duplicates of those citations to Plaintiff on June 14, 2011; July 11, 2011; August 9, 2011; September 8, 2011; October 11, 2011; October 7, 2011; November 7, 2011; December 1, 2011; January 13, 2012; February 8, 2012; and March 8, 2012.  *Id.*, ¶ 200.  Plaintiff alleges that a total of 67 citations were issued in the period from May 11, 2011 to March 8, 2012.  *Id.*

Additionally, Plaintiff alleges that, on February 16, 2011, Defendant Nicholson served him with notices of violation for two properties owned by Plaintiff and Marilyn Liggett, followed by a total of 50 citations issued on May 11, 2011 "and thereafter."  *Id.*, ¶¶ 201, 203.  Plaintiff further alleges that, on February 7, 2011, Defendant Nicholson served upon Plaintiff a notice of violation for a property owned by Manor Investments, Ltd., followed by a total of 13 citations issued on May 11, 2011 and thereafter.  *Id.*, ¶ 202. Defendant Nicholson also allegedly served Plaintiff with a notice of violation and a total of 4 citations (issued on March 8, September 30, and November 7, 2011 "and thereafter") in relation to a property owned by Brownsville Group Ltd.  *Id.*, ¶ 204.

At hearings regarding the above-referenced citations, Plaintiff's attorney purportedly argued that the subject properties were involved in eminent domain proceedings and that title had transferred to the Fayette County Tax Sale Bureau as the result of a tax sale on July 12, 2010. *Id.*, ¶¶ 192, 206. Plaintiff's attorney, at such hearings, also purportedly questioned the validity of the citations based upon Defendant Nicholson's alleged lack of state certification; the alleged failure of the citations to state the corrective work to be performed and a deadline for completion of the same; the allegedly improper inclusion of two violations in a single citation; and the allegedly improper issuance of multiple citations for the same violation. *Id.*, ¶¶ 206-08. Plaintiff alleges that the 67 citations were ultimately withdrawn as of April 27, 2012. *Id.*, ¶ 209.

## III. ADDITIONAL FACTS ESTABLISHED BY OFFICIAL COURT RECORDS

On September 29, 2012, Plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania at docket number 12-bk-24879. A copy of the docket is attached as Exhibit A, and Moving Defendants respectfully request that the Court take judicial notice of all documents of record in that proceeding.[2]

In the instant civil action, Plaintiff seeks monetary damages based upon citations he was issued based upon events which occurred through approximately of March 2012. In Schedule B, Paragraph 21 of his Bankruptcy Petition, which requires the disclosure of all "other contingent and unliquidated claims of every nature," Plaintiff did not identify any of these claims against the Borough or any of the Defendant Borough officials. (Exhibit B,

---

[2] "[T]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Caleb v. CRST, Inc.*, 43 F. App'x 513, 515 (3d Cir. 2002)(citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir.1999)).

p. 6).   Plaintiff verified the Bankruptcy Petition under penalty of perjury.  (Exhibit B, p. 42).

The  docket  in  that  proceeding  also  does  not  reflect  that  Plaintiff,  at  any  time,

supplemented or amended his Bankruptcy Petition to disclose such claims.  (Exhibit A).

On March 3, 2014, Plaintiff commenced his claims against Defendants through a

Praecipe for Writ of Summons in the Court of Common Pleas of Fayette County.  (State

Court Docket, Exhibit C; Praecipe for Writ of Summons, Exhibit D).  Said Praecipe was

filed in Plaintiff's own name.  (Exhibit D).  On July 11, 2014, by Order of United States

Bankruptcy  Judge  Carlota  M.  Bohm,  Plaintiff  received  a  discharge  finalizing  the

bankruptcy.   (Exhibit E).   3 days later, on July 14, 2014, Plaintiff filed his original

Complaint in the state court.  (Exhibit C).

## IV.    STANDARD OF REVIEW

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial

plausibility  when  the  plaintiff  pleads  factual  content  that  allows  the  court  to  draw  the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)) (internal quotations omitted).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The Supreme Court has explained that, while a court must accept as true all of the

factual allegations contained in a complaint, that requirement does not apply to legal

conclusions.  *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949

(citing *Twombly*, 550 U.S. at 555); *see also, Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) and *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008).  The determination of whether a complaint contains a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950  (citing *Twombly*, 550 U.S. at 556).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  A motion to dismiss should be granted pursuant to Rule 12(b)(6) if the factual allegations are insufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**B.      Motion to Dismiss Pursuant to Rule 12(b)(5)**

Federal Rule of Civil Procedure 12(b)(5) empowers a court to dismiss a case based upon insufficient service of process, or to quash the defective service made upon the defendant. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir.1992).  When a defendant objects to the sufficiency of service of process, "the party making the service has the burden of demonstrating its validity." *Sampath v. Concurrent Technologies Corp.,* 227 F.R.D. 399, 402 (W.D. Pa. 2005)(citations and internal quotations omitted); *see also Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476 (3d Cir.1993). Nor does the defendant's notice of the action, by itself, validate an otherwise defective service. *Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565, 568 (3d Cir.1996)(quoting *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.3d 476, 492 (3d Cir.1993)).

## V.    ARGUMENT

**A.    All of Plaintiff's claims are barred by judicial estoppel because Plaintiff has taken irreconcilably inconsistent positions in the instant lawsuit and his prior bankruptcy proceeding, has acted in bad faith, and no lesser sanction than dismissal is warranted.**

Judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, prevents a party from asserting a position in one matter before a court that is inconsistent with a position taken in the same or a previous proceeding. *Hardee-Guerra v. Shire Pharmaceuticals*, 737 F. Supp.2d 318, 328-32 (E.D. Pa. Aug. 25, 2010) (dismissing claims seeking monetary damages where plaintiff concealed tort action from creditors during bankruptcy pursuant to judicial estoppel); *Bexley v. Dillon Companies, Inc.*, 2006 WL 758474, *5 (E.D. Colo. Mar. 23, 2006). Judicial estoppel permits a court to exercise its intrinsic ability to dismiss an offending party's suit, without considering the merits of the same, when such is necessary to prevent the litigant from playing fast and loose with the court and allowing the litigant to gain an advantage by litigating on one theory and then seeking an advantage by pursing an inconsistent theory in other litigation. *Id.; Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors*, 337 F.3d 314, 391 (3d Cir. 2003). The doctrine is appropriate where the inconsistent positions are "tantamount to a knowing misrepresentation to or even fraud on the court." *Krystal*, 337 F.3d at 324.

For judicial estoppel to apply, three elements must be satisfied. *Krystal*, 337 F.3d at 319. "First, the party to be estopped must have taken two positions that are *irreconcilably inconsistent.* Second, judicial estoppel is unwarranted unless the party *changed his or her position 'in bad faith* --i.e., with intent to play fast and loose with the court.'" *Krystal*, 337 F.3d at 319 (emphasis in original). "A rebuttable inference of bad

faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Id.* at 321. Third, a court may not employ judicial estoppel unless no lesser sanction would adequately remedy the damage done by the misconduct of the litigant and the sanction is tailored to address that harm. *Id.* at 319. Notably, "the application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." *Id.* at 324.

In *Krystal*, the plaintiff failed to disclose on its bankruptcy petition claims that it had against the defendant. *Krystal*, 337 F.3d at 318-25. The lower court, *sua sponte*, dismissed the plaintiff's complaint at the pleading stage based on judicial estoppel. *Id.* at 319. On appeal, the Third Circuit Court of Appeals affirmed the lower court, explaining that the plaintiff knew of each of its claims against the defendant prior to filing for bankruptcy, failed to mention the claims on the bankruptcy petition and schedules, and, thereby, "conceal[ed] the claims from creditors in the hope of retaining any recovery for itself." *Id.* at 320. The plaintiff attempted to amend its bankruptcy filings to cure the "defect," but as the Third Circuit explained, the "Bankruptcy Court was not impressed by Krystal's [plaintiff's] eleventh hour candor and neither are we." *Id.* at 321.

The Third Circuit, in affirming the dismissal, reasoned that while,

> [t]he fact that a sanction is to be used sparingly does not mean that it is not to be used when appropriate. Applying a lesser sanction here (such as requiring Krystal [plaintiff] to pay unsecured creditors the balance of their claims out of any damages Krystal might recover from the instant action) would reward Krystal for what appears to be duplicitous conduct in the course of its bankruptcy proceedings. Krystal would still reap the benefits of any recovery beyond the amount paid to satisfy outstanding debts. In addition, the integrity of both the bankruptcy process and the judicial process would suffer.

*Id.* at 325. The Third Circuit, having been satisfied that the plaintiff was given a meaningful opportunity to explain itself through the filing of a brief and the opportunity for oral argument, determined that the plaintiff's claims should be dismissed. *Id.*

In the instant matter, Plaintiff's claims against Defendants should be dismissed pursuant to the doctrine of judicial estoppel. Plaintiff has taken two irreconcilably inconsistent positions by failing to disclose the instant civil claims in his bankruptcy petition and schedules as required, then asserting those claims in the instant lawsuit following his discharge from bankruptcy. The commencement of a Chapter 7 bankruptcy carries with it the obligation to schedule as asserts "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Such legal interests include civil litigation claims. *Anderson v. Acme Mkts.*, 287 B.R. 624, 628 (E.D. Pa. 2002).[3] In addition, Federal Rule of Bankruptcy Procedure 1007(h) requires the filing of a supplemental schedule regarding interests acquired or arising after the filing of the bankruptcy petition. Pursuant to Rule 1007(h), a supplemental schedule must be filed within 14 days after the information comes to the Debtor's knowledge.

According to the Amended Complaint, Plaintiff's claims in this action are based upon the Borough's issuance of a number of property code citations to Plaintiff between 2005 and March 8, 2012, which Plaintiff claims were "null and void," defective on various grounds, and violative of his constitutional rights. (Amended Complaint, ¶¶ 187, 206-08, 219-20). On September 29, 2012, Plaintiff filed for voluntary Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania at docket

---

[3] "Possible" causes of action are enough to trigger the duty to disclose. *See Krystal*, 337 F.3d at 318-25; *Ortlieb v. Hudson Bank*, 312 F. Supp. 2d 705, 712-13 (E.D. Pa. 2004)(explaining that "if

number 12-bk-24879.   Plaintiff was clearly aware of every allegation asserted in the Amended Complaint when he filed his bankruptcy petition and summary of schedules, as the events in question occurred prior to his commencing the bankruptcy proceeding on September 29, 2012.[4]   In paragraph 21 of his bankruptcy petition, which requires the disclosure of all "other contingent and unliquidated claims of every nature," Plaintiff failed to identify any of his claims against Moving Defendants, Borough of Brownsville, Brownsville Borough Code Enforcement Officer, Edward E. Nicholson, Brownsville Borough Mayor, Lester J. Ward, and Borough of Brownsville Council Members, Jack J. Lawver, Thomas Bush, John T. Hosler, James S. Lawver, Charles B. Perkins, Ross T. Swords, Jr., and/or Tracy Zivkovich, related to the above-referenced citations.  (Exhibit B, p.6, ¶ 21). The bankruptcy petition was executed by Plaintiff and verified by him "under penalty of perjury."  *Id.*, p.20 of 42.

On March 3, 2014, Plaintiff commenced his claims against Defendants through a Writ of Summons in the Court of Common Pleas of Fayette County. On July 11, 2014, by Order of the Honorable Carlota M. Bohm, United States Bankruptcy Judge, Plaintiff received a discharge finalizing the bankruptcy.  (Exhibit C).  On July 14, 2014, a mere three days after receiving his discharge in bankruptcy, Plaintiff filed his original Complaint asserting various claims against the Defendants based upon the above-referenced citations.

At no time did Plaintiff disclose to the bankruptcy court that he had unliquidated claims against Defendants, which Plaintiff now appears intent on pursuing, despite having

---

the debtor has enough information prior to confirmation to suggest that it may have a possible cause of action, then it is a known cause of action such that it must be disclosed.").

[4] The latest event alleged in the Amended Complaint is the withdrawal of 67 citations on April 27, 2012.  (Document 12, ¶ 209).

received a bankruptcy discharge and having his debts erased. Therefore, Plaintiff took the position during the bankruptcy proceeding that his claims against Defendants did not exist, were not assets, and had no monetary value. Here, however, Plaintiff seeks monetary damages from Defendants for claims that arose prior to his discharge from the bankruptcy proceeding. These two positions are irreconcilably inconsistent. Moreover, Plaintiff, with awareness of the instant claims, signed verifications, under penalty of perjury, that the bankruptcy petition and schedules were true and correct, when, in fact, they were not accurate.

By these actions, Plaintiff, in bad faith, concealed these claims from his creditors and no lesser sanction than dismissal is warranted. Plaintiff provided false information in the bankruptcy proceeding to conceal an asset – the instant claims -- from his creditors. Plaintiff, undoubtedly, seeks to prevail at trial and obtain a windfall in this matter at the expense of his creditors in the bankruptcy proceeding. As in *Krystal*, Plaintiff, if permitted to proceed in this action, could reap the benefit of any recovery as a windfall and not pay his creditors an amount that would otherwise have been available for their benefit, assaulting the integrity of both the bankruptcy process and the judicial process before this Honorable Court. Therefore, Plaintiff's duplicitous conduct warrants a sanction no less than complete dismissal of his claims against Defendants.

Critically, "a District Court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes." *Krystal*, 337 F.3d at 325, *quoting Montrose Medical Group Participating Savings Plan v. Bugler*, 243 F.3d 773, 780 n.5 (3d Cir. 2001). Indeed, the absence of testimony on the bad faith issue does not defeat the clear application of judicial estoppel. *See id.* As the Third Circuit Court of Appeals held in *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416-18

(3d Cir. 1988), if the pleadings show (1) the fact of non-disclosure of the asset combined with (2) a debtor's obvious knowledge of the existence of the asset, a court need not take testimony in order to make a finding of bad faith. *See Krystal*, 337 F.3d at 325, *citing Oneida*, 848 F.2d at 416-418.

As set forth above, Plaintiff did not disclose his claims against Defendants in his bankruptcy petition and summary of schedules despite the claims having accrued prior to his commencing the bankruptcy proceeding on September 29, 2012. Moreover, at no point during the bankruptcy proceeding did Plaintiff file a supplemental schedule notifying his creditors of his interest in his claims against Defendants as required by Federal Rule of Bankruptcy Procedure 1007(h). Instead, Plaintiff waited until after his discharge from bankruptcy on July 11, 2014, to identify the nature of his claims against Defendants, as set forth in the original Complaint filed in the state court on July 14, 2014. As such, the record is sufficient to support a finding of bad faith by this Honorable Court. Accordingly, Moving Defendants respectfully submit that Plaintiff's claims against Defendants are barred by the doctrine of judicial estoppel and that the Amended Complaint should be dismissed with prejudice.

In the event that this Honorable Court does not deem the claims set forth in the Amended Complaint to be barred by judicial estoppel, Moving Defendants respectfully submit that Plaintiff's claims should be dismissed on the following alternative grounds.

**B.** **Plaintiff's 42 U.S.C. § 1983 claims (Counts 1 and 2) regarding all citations issued prior to March 3, 2012 should be dismissed on the basis of the 2-year statute of limitations.**

The Third Circuit permits a defendant to assert the statute of limitations defense via a motion to dismiss pursuant to Rule 12(b)(6) where the dates alleged in the subject pleading show that the cause of action has not been brought within the applicable

limitations period, *i.e.*, where it is apparent on the face of the complaint that the claims asserted therein are time-barred. *Robinson v. Johnson*, 313 F.3d 128, 135, n.3 (3d Cir. 2002); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994)(explaining that "[w]hile the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

"The statute of limitation for claims arising under § 1983 is the state statute of limitation for personal injury actions, which in Pennsylvania is two years." *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003)(citing 42 Pa.C.S. § 5524). The statute of limitations for a cause of action under 42 U.S.C. § 1983 begins to run "when the plaintiff has a complete and present cause of action," that is, "when the plaintiff can file suit and obtain relief." *Wallace v. Kato,* 549 U.S. 384, 388 (2007) (internal quotations and citation omitted); *see also Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)(explaining that a claim accrues under 42 U.S.C. § 1983 at the time the plaintiff knew or had reason to know of the injury which is the basis of the lawsuit). The Third Circuit has further explained that a cause of action accrues "upon awareness of actual injury, not upon awareness that [the] injury constitutes a legal wrong." *Oshiver,* 38 F.3d at 1386. "[I]t is also important to note just how little knowledge a plaintiff must have in order for his claim to accrue. The general rule establishes a relatively low standard, requiring only that the plaintiff should have known of his injury for

the claim to accrue." *McGarrey v. Marquart*, 2010 WL 235115 (W.D. Pa. 2010)(No. 07-1556)(McVerry, J.)(citing *Sameric,* 142 F.3d at 599).[5]

According to the Amended Complaint, Plaintiff contends that the citations issued by Defendant Nicholson violated his rights because Plaintiff was no longer the owner of the subject properties at the time the citations were issued (as title had transferred to the Fayette County Tax Bureau as a result of the July 12, 2010 tax sale); because Defendant Nicholson allegedly lacked "State certification"; because the citations did not include a "correction order" stating the work to be done and a deadline for the same; because two violations were allegedly included in a single citation; and because multiple citations were allegedly issued for the same violation. *Id.,* ¶¶ 206-08. Plaintiff further alleges that the Borough had been advised by the Magisterial District Judge, in August and December of 2009, that new notices of violation (as opposed to duplicate notices) must be filed for past violations that had not been corrected. *Id.,* ¶ 189. As such, pursuant to Plaintiff's own allegations, the facts regarding these alleged deficiencies in the citations and/or the manner in which they were issued were within Plaintiff's knowledge at the time he was served with each set of citations.

---

[5] Moving Defendants anticipate that Plaintiff will raise the continuing violations doctrine. Where applicable, that doctrine permits a plaintiff to recover for "conduct that began prior to the [statute of limitations] period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination." *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 481 (3d Cir.1997). However, the continuing violation doctrine does not apply to discrete acts which are independently actionable. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 112–14 (2002). Moreover, the Third Circuit Court of Appeals has stated, "[N]either this Court nor the Supreme Court has ever applied the continuing violation doctrine outside of the employment discrimination context." *Hunt v. Pa. Dep't of Corr.,* 289 F. App'x 507, 509 (3d Cir. 2008); *see also Young v. Beard,* 2009 WL 3111742 (M.D. Pa. 2009)("The Third Circuit does not apply the continuing violations doctrine in the Section 1983 context….[If the] Defendants engaged in actionable conduct outside the limitations period, other wrongful conduct of a similar nature in the limitations period does not toll or extend the time in which plaintiff may seek relief.")

Plaintiff initiated this lawsuit on March 3, 2014.  Pursuant to the two-year statute of limitations which governs his 42 U.S.C. § 1983 claims, any claims based upon citations issued prior to March 3, 2012 (i.e., the citations issued between 2005 and 2009, and on February 16-17, 2011; May 11, 2011; June 14, 2011; July 11, 2011; August 9, 2011; September 8, 2011; October 11, 2011; November 7, 2011; December 1, 2011; January 13, 2012; and February 8, 2012) are clearly untimely.  To the extent that Plaintiff's 42 U.S.C. § 1983 claims are purportedly based upon any of the other events alleged in the Amended Complaint which occurred prior to March 3, 2012, any such claims are likewise untimely.  Thus, all claims asserted in Counts 1 and 2 of the Amended Complaint should be dismissed on the basis of the statute of limitations, except to the extent that such claims relate to the citations issued on March 8, 2012.

## C.  The Equal Protection claim set forth in Count 1 of the Amended Complaint is time-barred.

Count 1 of the Amended Complaint purports to assert a claim for violation of Plaintiff's equal protection rights, premised upon the allegation that "Defendants intentionally treated plaintiff differently than similarly situated property owners," in that "[f]rom **2005 to 2009**, [the Borough of Brownsville] issued 161 citations, of which 145 (or 90%) were issued to plaintiff."  (Document 12, ¶ 219.i.)(emphasis added).  Plaintiff describes this alleged differential treatment as consisting of his being precluded from burning demolition debris on site, while another property owner (identified as Mr. Kovscek) was allegedly permitted to do so.  Also during the above-referenced time period, the Borough permitted a second property owner (identified as Michael Novotny) to "perform work without a permit," while allegedly denying Plaintiff a building permit to perform the same work on his own property.  Plaintiff further alleges that he was "cited

personally" for property code violations on a property he held through a corporate entity, while another individual (identified as Robert Arthurs) received citations in the name of "Sage Associates" for a property purportedly owned by that entity.   Plaintiff also conclusorily alleges that the Borough "used expired property maintenance codes while policing Plaintiff's buildings," thereby "holding [him] to a higher standard than similarly situated property owners.  Plaintiff does not allege any instances in which the Borough allegedly applied an updated property code to any other property owner.

As fully set forth in Section IV.B., *supra*, these alleged violations of Plaintiff's equal protection rights arising from events which are specified to have occurred between 2005 and 2009 are clearly barred by the 2-year statute of limitations which governs claims asserted pursuant to 42 U.S.C. § 1983.  Accordingly, Count 1 of the Amended Complaint should be dismissed with prejudice.

**D.     Count 2 of the Amended Complaint should be dismissed, because Plaintiff's allegations fail to demonstrate any acts by Moving Defendants which constitute a "taking" of real property or a violation of Plaintiff's substantive due process rights.**

Count 2 of the Amended Complaint, which is titled "42 U.S.C. 1983…for Deprivation of Civil Rights, Color of State Law," asserts that the Defendants "used the [Brownsville Borough] property maintenance code as a sword to harass, intimidate and financially cripple plaintiff"; "dispossessed plaintiff of his property in a July 12, 2010 Fayette County Upset Tax Sale"; and "have utilized plaintiff's development plan and plaintiff's marketing proposal in their effort to redevelop the property."  (Document 12, p. 57).

Moving Defendants have interpreted such allegations as a "taking" claim under the Fifth Amendment (as applied to the states through the Fourteenth Amendment) and/or a

substantive due process claim pursuant to the Fourteenth Amendment.   Moving

Defendants will separately address the legal insufficiency of each of these claims below.

    1.    <u>Any claim of an unconstitutional "taking" that Plaintiff purports to assert is time-barred.  Alternatively, the allegations of the Amended Complaint fail to demonstrate that Plaintiff was deprived of the properties in question by Moving Defendants and/or that Plaintiff sought just compensation under the procedures provided by state law.</u>

The Takings Clause of the Fifth Amendment[6] provides:  "Nor shall private property

be taken for public use, without just compensation."  U.S. Const., amend. V.  A "taking"

occurs where the government effects a physical occupation of the property or takes title to

the property, or regulates the use of property in a manner that "unfairly single[s] out the

property owner to bear a burden that should be borne by the public as a whole."  *Yee v.*

*City of Escondido*, 503 U.S. 519, 522 (1992).  "The Fifth Amendment does not proscribe

the taking of property; it proscribes taking without just compensation….Nor does the Fifth

Amendment require that just compensation be paid in advance of, or contemporaneously

with, the taking; all that is required is that a reasonable, certain and adequate provision

for obtaining compensation exist at the time of the taking."  *Williamson County Regional*

*Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-195 (1985).

As fully set forth in Section IV.B., *supra*, claims under 42 U.S.C. § 1983 are

governed by a 2-year statute of limitations.   According to the Amended Complaint,

Plaintiff was deprived of the ownership of some of his properties on June 3, 2009, and of

the remaining properties on July 12, 2010.  (Document 12, ¶¶ 186, 194)  Plaintiff did not

commence this action until March 3, 2014, well beyond two years after the alleged

---

[6]  The provisions of the Fifth Amendment, which applies to actions taken by federal actors, are deemed to be incorporated into the Fourteenth Amendment, which applies to actions taken by state actors.  *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001); *Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (2005).

takings of his property.  Accordingly, it is apparent on the face of the Amended Complaint that any taking claim Plaintiff purports to assert pursuant to the Fifth/Fourteenth Amendment is time-barred.

Alternatively, Plaintiff's taking claim is legally insufficient on grounds that the Amended Complaint fails to demonstrate that Plaintiff was deprived of his ownership or use of the properties in question *by Moving Defendants.*  According to the Amended Complaint, the June 3, 2009 Declarations of Taking were filed by RACF (the Redevelopment Authority of the County of Fayette), and the July 12, 2010 auction was held by the Fayette County Tax Bureau.  (Document 12, ¶¶ 15, 186, 194).  Neither the Borough of Brownsville, nor any of the Moving Defendants (who are identified as the Borough's Mayor, Code Enforcement Officer, and various members of Borough Council) are alleged to have had any involvement in the filing of the Declarations of Taking or the auctioning of Plaintiff's properties.[7]  As such, the Amended Complaint provides no factual grounds supporting Plaintiff's taking claim against any of Moving Defendants.

---

[7] Certain allegations of the Amended Complaint appear to suggest that the Borough caused Plaintiff to lose ownership of his properties by allegedly issuing excessive citations under the its property maintenance code, with those citations resulting in substantial fines which "financially crippled" Plaintiff.  However, only those citations of which Plaintiff was found guilty (including 82 of the 145 citations referenced in Paragraph 179 of the Amended Complaint) would have resulted in him owing fines.  Pursuant to the *Rooker-Feldman* doctrine, a federal claim is not cognizable if a judgment in plaintiff's favor in the federal action would constitute an attack on a state court judgment.  *See E.B. v. Verniero,* 119 F.3d 1077, 1090 (3d Cir. 1997), citing *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,* 973 F.2d 169, 177–78 (3d Cir.1992).  Additionally, the only citations which are alleged to have resulted in the allegedly excessive fines were issued between 2005 and 2009, such that any 42 U.S.C. § 1983 claim based on those citations is clearly time-barred.  Moving Defendants further note that the citations issued by the Borough between February 2011 and March 2012 (referenced in Paragraphs 200 through 204 of the Amended Complaint) were issued *after* Plaintiff's properties were taken via eminent domain and/or tax sale, such that those citations (most of which are also time-barred) cannot possibly have *resulted in* the alleged takings that occurred in June 2009 and July 2010.

Furthermore, the Amended Complaint fails to plead facts supporting the requisite showing that Plaintiff availed himself of the state-provided procedures for obtaining just compensation for a purported taking.  The Supreme Court has emphasized:  "If a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Williamson*, 473 U.S. at 194-195.  Under Pennsylvania's Eminent Domain Code, 26 Pa.C.S. § 101, *et seq*, a party upon whom a notice of condemnation is served may challenge the same by filing preliminary objections within 30 days of such service, and such preliminary objections are the exclusive means of challenging the power of the condemnor to appropriate the condemned property; the sufficiency of the security; the declaration of taking; or any other procedure followed by the condemnor.  26 Pa.C.S. § 306(a).  Additionally, the Eminent Domain Code provides a procedure under which a condemnee may obtain an assessment of just compensation, by filing a petition requesting an appointment of viewers.  26 Pa.C.S. § 502.

The Amended Complaint is devoid of any factual allegations demonstrating that Plaintiff used the procedures of the Pennsylvania Eminent Domain Code to attempt to obtain just compensation for the properties allegedly taken, or to otherwise oppose the alleged takings.  Because the absence of such efforts is fatal to a claim under the Just Compensation Clause via 42 U.S.C. § 1983 (*see Williamson*, 473 U.S. at 194-195), Count 2 of the Amended Complaint should be dismissed with prejudice to the extent that it is premised upon an alleged unconstitutional taking of Plaintiff's property.

      2.    <u>Any substantive due process claim that Plaintiff purports to assert in relation to being deprived of his property is time-barred.  Alternatively, the Amended Complaint fails to allege that *Moving Defendants* deprived Plaintiff of the fundamental rights in question, or engaged in the requisite conscience-shocking conduct.</u>

21

To establish a substantive due process claim based upon an alleged abuse of official power or arbitrary exercise of governmental authority, the plaintiff must demonstrate that he has been deprived of a "fundamental" interest protected by the Fourteenth Amendment, and that the alleged conduct of the government officials "shocks the conscience." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 2006 WL 2460881 (M.D. Pa. 2006)(citing *Woodwind Estates Ltd. v. W.J. Gretkowski*, 205 F.3d 118, 122 (3d. Cir.2000); *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir.2000); and *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).   The ownership of real property has been recognized as a fundamental right to which substantive due process protection applies. *Nicholas*, 227 F.3d at 141 (citing *DeBlasio*, 53 F.3d at 600).

Although Plaintiff has alleged that he was deprived of the ownership of multiple parcels of real property, according to the Amended Complaint, those alleged deprivations occurred on June 3, 2009 and July 12, 2010.  (Document 12, ¶¶ 186, 194).  Because this action was not commenced until March 3, 2014, the alleged deprivations are well beyond the applicable 2-year limitations period. *See* Section IV.B., *supra*.  As such, any claim for violation of Plaintiff's substantive due process rights is clearly time-barred.

Additionally or alternatively, the facts pled in the Amended Complaint demonstrate that the deprivations in question were effected by two third parties -- the Redevelopment Authority of the County of Fayette, via eminent domain proceedings, and the Fayette County Tax Bureau, via a tax sale.  (Document 12, ¶¶ 186, 194).  The Amended Complaint is devoid of any factual allegations that Moving Defendants, the Borough of Brownsville and various officials thereof, instituted either of these procedures.  As such,

without having deprived Plaintiff of a fundamental interest, Moving Defendants cannot be liable to Plaintiff under a substantive due process theory.

Furthermore, the Amended Complaint fails to allege any conscience-shocking conduct on the part of Moving Defendants.  To meet the "shocks the conscience" standard, the alleged conduct must be "so brutal and offensive that it does not comport with traditional ideas of fair play and decency," or must "interfere[] with rights implicit in the concept of ordered liberty." *Lewis, 523 U.S. at* 847 (citations omitted).  "Thus, in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Id.* at 847.  The Supreme Court has emphasized that "only the most egregious official conduct can be said to be "arbitrary in the constitutional sense."  *Id.* at 846.

Here, the Amended Complaint alleges that the Borough cited Plaintiff for numerous violations of its property maintenance code after title to the properties in question had transferred to the Fayette County Tax Bureau; that the citations failed to include a "correction order" specifying the work to be done and the date by which compliance must be achieved; that more than one violation was listed on each citation; and that duplicate citations were issued for the same violation.  (Document 12, ¶¶ 206-08).  Plaintiff further alleges that such citations were ultimately withdrawn following two hearings.  *Id.*, ¶ 209.  Moving Defendants respectfully submit that this alleged conduct cannot, as a matter of law, be deemed sufficiently "brutal and offensive," "outrageous," or "egregious" to shock the conscience, as required to sustain a substantive due process claim.

For any or all of the above-stated reasons, Count 2 of the Amended Complaint should be dismissed with prejudice to the extent that it is premised upon an alleged violation of Plaintiff's substantive due process rights.

**E.      Plaintiff's claims against individual Moving Defendants Ward, Bush, Jack Lawver, James Lawver, Perkins, Swords, and Zivkovich should be dismissed because the Amended Complaint fails to allege any actions by said Defendants, within the limitations period, on which Plaintiffs' claims against them are based.**

Liability under 42 U.S.C. § 1983 requires the plaintiff to demonstrate that each defendant official had "personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

In the caption of the Amended Complaint, Plaintiff names the following Moving Defendants individually:  the Borough's Code Enforcement Officer, Edward E. Nicholson; the Borough's Mayor, Lester J. Ward; and members of Borough Council, Jack J. Lawver, Thomas Bush, John T. Hosler, James S. Lawver; Charles B. Perkins, Ross T. Swords, Jr., and Tracy Zivkovich.  With the exception of Defendant Nicholson, who allegedly issued the citations in question, the Amended Complaint fails to describe any action taken by each such Defendant (within the limitations period dating back to March 3, 2012) in violation of Plaintiffs' rights.

As such, the Amended Complaint is clearly insufficient to demonstrate the "personal involvement" required by  42 U.S.C. § 1983 (Counts 1 and 2 of the Amended Complaint).   Accordingly, Moving Defendants respectfully submit that Counts 1 and 2 of the Amended Complaint should be dismissed with prejudice as against Defendants Ward, Jack Lawver, James Lawver, Bush, Hosler, Perks, Swords, and Zivkovich.

**F.    All claims asserted against the Borough under 42 U.S.C. § 1983 (Counts 1 and 2) should be dismissed, because the Amended Complaint fails to demonstrate any violation of Plaintiff's federal rights by any Borough official, or alternatively, because the Amended Complaint fails to allege a municipal custom or policy which caused a violation of his federal rights.**

The Third Circuit has held that where no municipal official has violated the plaintiff's constitutional rights, a § 1983 claim against the municipality is foreclosed because, "There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact ... the officer inflicted no constitutional harm." *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006); *see also Grazier ex rel. White v. City of Philadelphia,* 328 F.3d 120, 124 (3d Cir.2003); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))." As such, because Plaintiff's Amended Complaint fails to demonstrate any violation of his constitutional rights by any of the individual Moving Defendants, as set forth in Sections IV.C. through IV.E. above, Plaintiff's § 1983 claim against the Borough must likewise be dismissed. Alternatively, as set forth below, said claim should be dismissed on the basis of Plaintiff's failure to allege facts demonstrating a custom or policy of the Borough which led to the alleged violation of Plaintiff's constitutional rights.

It is well established that a municipality cannot be held liable under 42 U.S.C. § 1983 ("Section 1983") solely because it employs an alleged tortfeasor, because respondeat superior liability is not recognized under Section 1983. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978); *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Thus, where a Section 1983 plaintiff claims that a local government caused its employees to violate his rights, "rigorous standards of culpability and causation must be applied" to ensure that the

local government is not held liable solely for the individual actions of an employee. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

To establish municipal liability under Section 1983, the plaintiff must identify a formal governmental "policy" or an informal governmental "custom" of the defendants, pursuant to which the alleged violation of the plaintiff's constitutional rights occurred. *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). A "policy" is shown by alleging that an employee or agent acted pursuant to an official policy issued by a municipal decisionmaker with final authority to establish municipal policy. *Id.* (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). A "custom" is shown by alleging a practice of the governmental entity which is so "well-settled and widespread" that it virtually constitutes law, regardless of whether it is specifically authorized. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

Here, despite its excessive length and detail, the Amended Complaint fails to clearly identify (and allege facts supporting) any alleged policy or custom of the Borough of Brownsville from which the alleged violation of Plaintiff's federal rights resulted. Plaintiff's failure to demonstrate such a custom or policy is fatal to his § 1983 claim against the Borough, such that this claim should be dismissed on the basis of legal insufficiency pursuant to Rule 12(b)(6).

**G.     Plaintiff's RICO claim (Count 3) should be dismissed because the Amended Complaint fails to demonstrate the requisite "pattern of racketeering activity" to sustain such a claim.**

The RICO ("Racketeer Influenced and Corrupt Organizations") statute, 18 U.S.C. § 1961 *et seq* (hereinafter "RICO"), provides a civil remedy, under which "[a]ny person injured in his business or property by reason of a violation of section 1962" may sue in the United States District Courts. 18 U.S.C. § 1964(c). Section 1962 of RICO makes the

following actions unlawful:  (a) for any person who has received income, derived directly or indirectly from a pattern of racketeering activity, or through collection of an unlawful debt, to use or invest any part of that income or the proceeds of such income to establish, operate, or acquire any interest in any enterprise which is engaged in or affects interstate or foreign commerce; (b) for any person, through a pattern of racketeering activity or collection of an unlawful debt, to acquire or maintain an interest in, or control of, any enterprise which is engaged in or affects interstate or foreign commerce; (c) for any person employed by or associated with any enterprise which is engaged in or affects interstate or foreign commerce, to conduct or participate in the enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt; and (d) for any person to conspire to commit the violations set forth in (a), (b), or (c).  RICO defines "racketeering activity" as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year," or "any act which is indictable under specified provisions of Title 18 of the United States Code" (including bribery; counterfeiting; embezzlement of pension and welfare funds; mail and wire fraud; unlawful procurement of citizenship or nationalization; obstruction of justice; tampering with a witness, victim or informant; forgery of passports; money laundering; murder for hire, sexual exploitation of children; slavery and trafficking in persons; interstate transportation of stolen motor vehicles; criminal infringement of a copyright; and other such acts which are clearly inapplicable to the facts of the instant case).  18 U.S.C. § 1961(1).  An "unlawful debt," within the context of RICO, means a

debt incurred or contracted in gambling activity which violates federal or state law, or which is unenforceable under state or federal laws regarding usury.  18 U.S.C. § 1961(6).

Plaintiff's factual allegations in the instant case clearly do not implicate activity of the kind made unlawful by RICO, as referenced above.  Plaintiff's claims are premised upon allegedly deficient or discriminatory citations he was issued for violations of the Borough's property maintenance code, and the alleged taking of his properties pursuant to eminent domain procedures and a county tax sale.  Because Plaintiff has failed to plead facts supporting a civil cause of action under Section 1964(c) RICO, Count 3 of the Amended Complaint should be dismissed with prejudice as a matter of law.

**H.     Plaintiff's Unjust Enrichment claim (Count 4) should be dismissed because the Amended Complaint fails to demonstrate that Plaintiff conferred a benefit upon Defendants pursuant to an alleged promise or agreement which is unenforceable as a matter of contract law.**

Unjust enrichment, or "quantum meruit," is a quasi-contractual theory, under which a party may recover when an intended contract between the parties is not enforceable under principles of contract law.  *See Suburban Transfer Service, Inc. v. Beech Holdings, Inc.,* 716 F.2d 220, 226-27 (3d Cir.1983)("Claims for unjust enrichment and the corresponding remedy, restitution, are only supportable when the parties' rights are not governed by a valid, enforceable contract."); *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 656-57 (3d Cir. 2003)(explaining that if the contract between the parties was unenforceable, the plaintiff could recover the value of its services under a theory of unjust enrichment.).

To sustain such a claim against a municipality or other local government entity, the plaintiff must demonstrate that the municipality "has voluntarily accepted and retained the benefits **of a contract which it had the power to make but which was**

defective in the method of its execution and consequently invalid." *J. A. & W. A. Hess, Inc. v. Hazle Twp.*, 484 Pa. 628, 633 (1979).  Under such circumstances, **"the party who, by furnishing labor or material, has conferred such benefits, may recover compensation therefor in a suit, not on the invalid contract itself, but upon a quantum valebat, quantum meruit, or for money had and received."** *Id.*  For example, in *Hess*, the defendant township solicited bids for "100 tons, more or less, of gravel," to be used on township roads.  The township accepted the plaintiff's bid of $3.50 per ton.  The township thereafter requested, and the plaintiff delivered, more than 6,000 tons of gravel.  The township then refused to pay for the gravel due to the substantial difference in the 100 tons contracted for, and the 6,000 tons that was actually requested.  The Pennsylvania Supreme Court held that, under such circumstances, the plaintiff was entitled to payment for the 6,000 tons on quantum meruit grounds.  *Id.*

Here, Plaintiff's unjust enrichment claim is premised upon the allegation that "Defendants benefitted by taking plaintiff's property and using his development and marketing plans without his permission."  (Document 12, p. 60).  As an initial matter, to the extent that this claim relates to the alleged "taking [of] plaintiff's property," that claim is governed by Pennsylvania's Eminent Domain Code and the Fifth/Fourteenth Amendment, as fully set forth in Section IV.D.1., *supra*, and should be dismissed with prejudice for the reasons outlined in Section IV.D.1.

To the extent that the unjust enrichment claim is based upon the alleged use of Plaintiff's "development and marketing plans," the factual allegations of the Amended Complaint fail to demonstrate that Plaintiff and any of Moving Defendants exchanged promises or otherwise intended or attempted to enter into a contract in that regard.  The Amended Complaint also fails to identify how each of the "Defendants" (which includes

not only the Borough, but also a number of individual officials) individually benefitted from the alleged use of Plaintiff's marketing and development plans.

For the above-stated reasons, Count 4 of the Amended Complaint should be dismissed with prejudice.

I.    **Plaintiff has failed to effect proper service upon Moving Defendants, such that the Court lacks personal jurisdiction over them.**

The Supreme Court has explained that a federal court cannot exercise personal jurisdiction over a defendant until the procedural requirements of service have been satisfied. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987). Defendants' removal of this action does not constitute a waiver of their objection to Plaintiff's failure to effect service in the state court. *See Allahar v. Clinical Lab. Inc.*, 2012 WL 833336 (D.V.I. 2012)(explaining that "removal from state to federal court is not a waiver of the removing party's objections to jurisdiction in federal court, and thus does not preclude the Court from considering Defendant's jurisdictional defense")(citing *Minnesota v. United States,* 305 U.S. 382, 388–89 (1939)(explaining that removal from state to federal court is "without legal significance" as to the question of jurisdiction) and *Orange Theatre Corp., v. Rayherstz Amusement Corp.,* 139 F.2d 871, 874 (3d Cir.1944)(when a defendant voluntarily places himself under the jurisdiction of a federal court, he does not lose the right to assert the original lack of jurisdiction)); *DiCesare-Engler Prods., Inc. v. Mainman Ltd.*, 421 F. Supp. 116, 119 (W.D. Pa. 1976)("If the state court lacked jurisdiction over him in the first place, this court has acquired no jurisdiction over [the defendant] by removal.")(citing *Freeman v. Bee Machinery Co.*, 319 U.S. 448 (1943)); *A. J. Curtis & Co. v. D. W. Falls, Inc.*, 305 F.2d 811, 814 (3d Cir. 1962)("The lack of jurisdiction in the State court was fatal to the jurisdiction of the district court. The

30

jurisdiction of a federal court on removal is, in a limited sense, derivative. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none....")(citing *Minnesota v. United States*, 305 U.S. 382, 389 (1939))(internal quotations omitted).

Plaintiff commenced this action by Praecipe for Writ of Summons in the Court of Common Pleas of Fayette County, Pennsylvania. The Pennsylvania Rules of Civil Procedure (the "Pennsylvania Rules") provide that "original process shall be served within the Commonwealth only by the sheriff," except under specified circumstances which are not applicable in the present case. Pa.R.C.P. 400(a),(b). According to the subsequently filed Complaint, the Borough of Brownsville is a political subdivision of the Commonwealth of Pennsylvania, and Moving Defendants are elected or appointed officials thereof. (Plaintiff's Original Complaint, ¶¶ 6-9)(attached to Document 1); see also Document 12, ¶¶ 3-8).

Under the Pennsylvania Rules:

Original process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint....If service within the Commonwealth is not made within [such time]..., the prothonotary upon praecipe and upon presentation of the original process, shall continue its validity by reissuing the writ or reinstating the complaint, by writing thereon 'reissued' in the case of a writ or 'reinstated' in the case of a complaint.

Pa.R.C.P. 401(a),(b)(1).

Rule 422 of the Pennsylvania Rules of Civil Procedure, which governs service upon local governments, provides:

Service of original process upon a political subdivision shall be made by handing a copy [of the writ of summons and complaint] to

    (1) an agent duly authorized by the political subdivision to receive service of process, or

31

(2)  the person in charge at the office of the defendant, or

(3)  the mayor, or the president, chairman, secretary or clerk of the tax levying body thereof....

Pa.R.C.P. 422(b).

To effect service of process upon an individual defendant under the Pennsylvania Rules, a copy of the original process (writ of summons or complaint) to the defendant, or to an adult member of defendant's family or other adult person in charge at the defendant's residence, or to the defendant's agent or person in charge at the defendant's usual place of business. Pa.R.C.P. 402(a).  Alternatively, the defendant or his authorized agent may accept service of process by filing a document with the court reflecting such acceptance of service.  Pa.R.C.P. 402(b).

Unless the defendant accepts service, a return of service (or of no service, in the event that service could not be effected) must be filed with the prothonotary.  Pa.R.C.P. 405(e),(f).  Where service of original process is required to be made by the sheriff, the return of service or no service is filed by the sheriff.  Pa.R.C.P. 405(a).  Even where service is permitted to be made by another person, an affidavit of service must be filed, Pa.R.C.P. 405(d), and where service is permitted to be made by certified mail, proof of such service must be filed in the form set forth in Pennsylvania Rule 405(c).

Here, according to the State Court's docket, Plaintiff did not provide the court with any instructions for service.  (Exhibit C, entry dated 3/3/2014).  The State Court's docket further reflects that no return of service, affidavit, or any other purported proof of service was filed as to any of the Defendants, or that Plaintiff, at any time, filed a praecipe requesting reissuance of the Writ of Summons.  (Exhibit C).  Nor does the docket reflect that an Acceptance of Service was filed on behalf of any of the Defendants.  *Id.*

Additionally, to the extent that it is permissible for Plaintiff to effect service of process pursuant to the Federal Rules of Civil Procedure, the activity of record on this Court's docket reflects no such efforts by Plaintiff following Defendants' removal of the case on August 13, 2014.

Accordingly, Moving Defendants respectfully submit that, due to Plaintiff's failure to effect service of process, this Honorable Court lacks personal jurisdiction over them.

**J.    To the extent that any claims remain following the Court's disposition of the instant Motion to Dismiss, the Amended Complaint should be stricken and Plaintiff should be required to re-plead the remaining claims in a Second Amended Complaint which complies with the "short and plain statement" requirement of Rule 8.**

"It is well-settled that: the Federal Rules of Civil Procedure require that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief...and that each averment be concise, and direct." *Holness v. Wetzel*, 2013 WL 5675511, at 4 (M.D. Pa. 2013)(citing Fed.R.Civ.P. 8(a)(2) and 8(e)(1)) and *Scibelli v. Lebanon County*, 219 Fed.Appx. 221, 222 (3d Cir. 2007))(internal quotations and brackets omitted). "Rule 8(a) also requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Pushkin v. Nussbaum*, 2014 WL 1494522, at 5 (D.N.J. 2014)(internal quotations omitted)(dismissing a lengthy amended pleading which failed to "specify which actions of which Defendant entitle him to what relief under which statute and why"). "[I]t is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims." *Holness*, 2013 WL 5675511, at 4 (citations omitted). "[T]he Court 'cannot expect Defendants to

defend against claims that are not clearly and specifically alleged." *Pushkin,* 2014 WL 1494522, at 4.

As such, a complaint is appropriately dismissed under Rule 8 when it is "of unwieldy length" and "largely unintelligible"; when it is "so rambling and unclear as to defy response"; or when it leaves the defendants "having to guess what of the many things discussed constitute[s] a cause of action." *Id.* at 4-5 (internal quotations and brackets omitted)(citing *Stephanatos v. Cohen,* 236 Fed.Appx. 785, 787 (3d Cir. 2007), *Binsack v. Lackawanna County Prison,* 438 Fed.Appx. 158 (3d Cir. 2011), and *Tillio v. Spiess,* 441 Fed.Appx. 109 (3d Cir. 2011))(further citations omitted). *See also Holness,* 2013 WL 5675511 (dismissing a complaint in its entirety where the complaint failed to set forth well-pleaded facts describing what each of the many named defendants had allegedly done, also noting that many of the acts complained of were time-barred); *Pushkin,* 2014 WL 1494522 (dismissing plaintiff's 86-page second amended complaint, filed after his prior complaint was dismissed for insufficient specificity, because the later pleading failed to cure the deficiencies of the prior pleading, and "if anything, amplifie[d] [those] problems," in that the second amended pleading required the defendants to "comb through 86 pages of factual allegations without any delineated causes of action...and attempt to decipher a link between [their] alleged conduct and some basis of liability related to one of the listed statutes").

Here, the 222-paragraph Amended Complaint, following 54 pages of allegations, including more than 20 years of background events, sets forth 4 purported causes of action (one of which, Count 2, is simply entitled "42 U.S.C. 1983" without identifying the

particular federal right or rights any of Moving Defendants allegedly violated).[8]   Each cause of action is apparently asserted against all 12 Defendants collectively, but fails to identify which acts by which Defendant(s) purportedly support the claim, leaving Moving Defendants to guess at the factual basis of the claims asserted against them.

## VI.   CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that the Court enter an order dismissing the Amended Complaint with prejudice pursuant to Rule 12(b)(6) on grounds of judicial estoppel and/or legal insufficiency, or, alternatively, enter an order dismissing the Amended Complaint based upon Plaintiff's failure to effect service of process.

To the extent that any claims remain upon this Honorable Court's disposition of the instant Motion to Dismiss, Moving Defendants further respectfully request that the Amended Complaint be stricken on grounds of Plaintiff's gross non-compliance with Rule 8, and that Plaintiff be directed to plead a "short and plain statement" of any such remaining claims in the form of a Second Amended Complaint, in accordance with the requirements of Rule 8.

---

[8]   42 U.S.C. § 1983 provides in relevant part:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."  Thus, "42 U.S.C. § 1983 is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." *DiBella v. Beachwood,* 407 F.3d 599, 601 (3d Cir.2005).  As noted above, Plaintiff, in Count 2, has not identified, by reference to a constitutional amendment or federal statute, the particular federal right(s) that he contends were violated by any of the Defendants.  "A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right." *Ickes v. Borough of Bedford,* 807 F.Supp.2d 306, 315 (W.D.Pa.2011).

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

By:_____

Thomas P. McGinnis, Esquire
Pa. ID # 46666
Karin M. Romano, Esquire
Pa. ID # 92068
Jeffrey D. Truitt, Esquire
Pa. ID # 309037

Counsel for Defendants, Borough of
Brownsville, Brownsville Borough Code
Enforcement Officer, Edward E.
Nicholson, Brownsville Borough Mayor,
Lester J. Ward, and Borough of
Brownsville Council Members, Jack J.
Lawver, Thomas Bush, John T. Hosler,
James S. Lawver, Charles B. Perkins,
Ross T. Swords, Jr. , and Tracy Zivkovich