IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNEST E. LIGGETT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-1086 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| THE BOROUGH OF BROWNSVILLE; | ) | |
| EDWARD E. NICHOLSON *Individually* | ) | |
| *and in his official capacity as Code* | ) | |
| *Enforcement Officer for the Borough of* | ) | |
| *Brownsville, Pennsylvania*; LESTER J. | ) | Re: ECF Nos. 15, 17, 22, 30 |
| WARD *Individually and in his official* | ) | |
| *capacity as Mayor of The Borough of* | ) | |
| *Brownsville, Pennsylvania*; JACK J. | ) | |
| LAWVER *Individually and in their* | ) | |
| *official capacity as Council Members of* | ) | |
| *The Borough of Brownsville, Pennsylvania;* | ) | |
| THOMAS BUSH *Individually and in their* | ) | |
| *official capacity as Council Members of The* | ) | |
| *Borough of Brownsville, Pennsylvania*; | ) | |
| JOHN T. HOSLER *Individually and in their* | ) | |
| *official capacity as Council Members of* | ) | |
| *The Borough of Brownsville, Pennsylvania;* | ) | |
| JAMES S. LAWVER *Individually and in* | ) | |
| *Their official capacity as Council Members* | ) | |
| *of The Borough of Brownsville,* | ) | |
| *Pennsylvania*; CHARLES B. PERKINS | ) | |
| *Individually and in their official capacity* | ) | |
| *as Council Members of The Borough of* | ) | |
| *Brownsville, Pennsylvania*; ROSS T. | ) | |
| SWORDS, JR. *Individually and in their* | ) | |
| *official capacity as Council Members of the* | ) | |
| *Borough of Brownsville, Pennsylvania*; | ) | |
| MELINDA K. DELLAROSE *Esquire,* | ) | |
| *Individually and in her official capacity as* | ) | |
| *Solicitor of the Borough of Brownsville,* | ) | |
| *Pennsylvania, Pennsylvania*; NORMA | ) | |
| J. RYAN *individually and in their official* | ) | |
| *Capacity as Council Members of the* | ) | |
| *Borough of Brownsville, Pennsylvania*; | ) | |
| TRACY SHEEHAN ZIVKOVICH | ) | |
| *Individually and in their official capacity as* | ) | |

*Council Member of the Borough of* )
*Brownsville, Pennsylvania*; DAVIS & )
DAVIS ATTORNEYS AT LAW *in their* )
*Official capacity as Appointed Solicitor of* )
*the Borough of Brownsville, Pennsylvania,* )
                              Defendants.  )


## OPINION

**KELLY, Chief Magistrate Judge**

Pending before the Court are Motions to Dismiss filed on behalf of each of the

Defendants. The Motions to Dismiss raise the absence of personal jurisdiction in this Court,

occasioned by the Plaintiff's failure to serve process in accordance with the Pennsylvania Rules

of Civil Procedure and/or Rule 4 of the Federal Rules of Civil Procedure.  Defendants

alternatively raise additional grounds for dismissal, including: (1) the applicable statute of

limitations as to certain of Plaintiff's claims, (2) the failure to allege facts giving rise to any

claims upon which relief may be granted, and (3) judicial estoppel as an apparent and complete

defense.

For the following reasons, the Motions to Dismiss at ECF Nos. 15, 17, 22 and 30 are

GRANTED.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Allegations

Plaintiff's Amended Complaint recounts his nearly 25-year unsuccessful venture to spur

commercial development along the Monongahela River in the economically depressed Borough

of Brownsville, Pennsylvania.  Plaintiff alleges his plan began in 1991, with the purchase of 127

abandoned properties.  Plaintiff pursued his vision for renewal throughout the 1990's up to 2010,

meeting with various political figures and private commercial parties to develop an outlet retail

mall and family entertainment center, an Olympic rowing facility, an Olympic cycling arena, a riverboat gambling casino, and/or an Indian Gaming casino site. For a variety of reasons contained in the 62 pages of the Amended Complaint, Plaintiff's dream of directing a revitalized Brownsville never came to fruition.

Plaintiff alleges that during the years 1992-2002, he maintained all buildings in accordance with the Borough of Brownsville Building Code. (ECF No. 12, ¶¶ 12-13). However, in 2001 to 2002, the Borough of Brownsville began to selectively enforce its building codes, requiring Plaintiff to obtain a permit to install chicken wire along the façade of a vacant theater, and requiring him to address major structural issues related to other vacant properties. Plaintiff was cited for several building code violations. The citations were reissued for continued noncompliance. In 2002, Plaintiff unsuccessfully appealed certain of the violations and was ordered by the Court of Common Pleas of Fayette County to pay fines and associated costs, to raze certain structures and to clear specific vacant sites.

Plaintiff again unsuccessfully sought court intervention in 2002 when his demolition plan of burning and burying debris at seven building sites was thwarted by the Borough. Plaintiff complained that a similarly situated property owner was able burn and bury debris, but that he was prevented from using these methods to clear his land. Similarly, in 2002, after being instructed to install a new roof on a dilapidated building, Plaintiff was required to complete (and recomplete) a building permit to gain approval for the encapsulation of the building. Plaintiff alleges that another property owner was allowed to install a new roof without a building permit, and that another owner was able to erect a blue tarp over the building in lieu of a roof, but he was not. (ECF No. 12, ¶¶ 46-65).

Plaintiff believes this disparate treatment and selective code enforcement was part of a scheme on behalf of Defendant Norma J. Ryan ("Ryan"), the former Borough Mayor, to advance a competing development plan. (ECF No. 12, ¶ 80). Specific instances of alleged disparate treatment involved the issuance of several Notice of Violation citations in 2003 through 2006, during which time Plaintiff alleges he "was held to a higher standard than similarly situated property owners." (ECF No. 12, ¶ 86 (b)).

Plaintiff contends that in 2007, he was subject to "a recurring pattern of retaliation and intimidation wherein vandalism follows court hearings where plaintiff prevails, public meetings where plaintiff was viewed favorably, or when plaintiff receives favorable press." (ECF No. 12, ¶ 86(e)). Plaintiff believes this was part of a coordinated effort by Defendant Ryan, as articulated in judicial proceedings in 2003, to acquire Plaintiff's property through eminent domain and to prevent any economic return on Plaintiff's investment. (ECF No. 12, ¶ 95).

Plaintiff further alleges that when Defendant Ryan left office in 2005, the "Redevelopment Authority of the County of Fayette" ("RACF") continued plans to demolish certain of plaintiff's properties in furtherance of a competing development plan for downtown Brownsville.[1] In 2006, Defendant Tracey Sheehan Zivkovich ("Zikovich"), a Borough Council member, held a "downtown property owners" town meeting and presented an RACF development plan that depicted certain of Plaintiff's properties as razed and replaced by a parking lot and curb cuts." (ECF No. 12, p. 148). Also in 2006, Plaintiff forwarded correspondence to the Borough of Brownsville Mayor, Council, Code Officials and Police

---

[1] The RACF has not been named a defendant in this action, but was named as a defendant in a state court action filed by Plaintiff, seeking a determination of the propriety of RACF's exercise of eminent domain as to certain properties owned by Plaintiff. <u>Alpha Fin. Mortgage, Inc. v. Redevelopment Auth. of Fayette Cnty.</u>, No. 1596 C.D. 2011, 2012 WL 8687702, at *1 (Pa. Commw. Ct. May 10, 2012).

Department documenting incidents of theft, damage and vandalism for the years 1993 to date which were not addressed by the Brownsville Police Department. Plaintiff asserted that "the groups had worked in concert to ignore vandalism on plaintiff's properties and utilize code enforcement as a sword to financially cripple plaintiff in pursuit of their effort to take plaintiff's properties and his development and marketing plans." (ECF No. 12, ¶ 155). According to Plaintiff, RACF executed additional code enforcement proceedings in 2006 and ordered the demolition of certain of Plaintiff's properties without "any court order hearing or due process." (ECF No. 12, ¶ 159).

In 2009, the RACF designated Plaintiff's properties as "blighted" and passed a condemnation resolution on May 18, 2009. Plaintiff alleges that on June 3, 2009, the RACF "filed *de jure* Declarations of Taking for Plaintiff's (22) properties in the downtown commercial district of [the Borough of Brownsville] and title to the properties was vested in RACF by operation of law 26 Pa. Cons. Stat. § 302(a)." Certain citations for code violations were reissued and then dismissed in December 2009, and again filed against Plaintiff by Defendant Edward E. Nicholson ("Nicholson"), the Code Enforcement Officer of the Borough, on March 8, 2010.

Plaintiff alleges he "sold" his remaining investment properties on July 12, 2010, at a "special Fayette County Upset Tax Sale." (ECF No. 12, ¶ 194). In the absence of any bids, Plaintiff alleges that legal title transferred to the Fayette County Tax Claim Bureau, and that by operation of 73 P.S. § 5860.607(g), Plaintiff was "prohibited from redeeming any of the properties." (ECF No. 12, ¶ 194).

Thereafter, from May 11, 2011, through March 8, 2012, Defendant Nicholson filed 67 additional citations against Plaintiff for building code violations. Plaintiff challenged the citations at a hearing, contending that because the properties were involved in an upset tax sale,

title transferred to Fayette County on June 12, 2010. In addition, Plaintiff argued that Nicholson was not qualified to issue citations, and that certain violations were improperly combined. Plaintiff alleges that the 67 citations were subsequently withdrawn on or about April 27, 2012. (ECF No. 12, ¶¶ 200, 209).

In 2013, the RACF solicited proposals for the development of Brownsville's historical district, "utiliz[ing] plaintiff's development plans, marketing plans and marketing materials." (ECF No. 12, ¶ 145). Plaintiff contends that the use of his proposal supports his claim for unjust enrichment.

Based upon the allegations in his Amended Complaint, Plaintiff asserts four causes of action, as follows:

1. Count I: an alleged violation of Plaintiff's rights to equal protection (presumably pursuant to the United States Constitution and 42 U.S.C. § 1983) by *inter alia*, issuing 145 citations against Plaintiff in the period 2005 through 2009, but treating other property owners differently by failing to issue citations for similar conditions and conduct (ECF No. 12, p. 55);

2. Count II: a claim allegedly arising under and pursuant to 42 U.S.C. § 1983, for the deprivation of Plaintiff's civil rights "in harassing intimidating and financially crippling plaintiff in an effort to take plaintiff's property and prosecute plaintiff's redevelopment plan;" and in "den[ying] plaintiff his right to own property," by utilizing "plaintiff's development plan and plaintiff's marketing proposals" (ECF No. 12, p. 57);

3. Count III: violations of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. §§ 1961 – 1968 and conspiracy to violate the RICO Act, 18 U.S.C. § 1962(d) (ECF No. 12, p. 58); and

4. Count IV: a state law claim for unjust enrichment arising out of "Defendants" taking plaintiff's property and using his development and marketing plans without his permission (ECF No. 12, p. 60).

**B. Procedural History**

This action was commenced on March 3, 2014, in the Court of Common Pleas of Fayette County, Pennsylvania, with the filing of a Praecipe for Writ of Summons. The writ named 13 defendants, including the Borough of Brownsville, its Mayor, Borough of Brownsville Council members, the Borough of Brownsville Code Enforcement Officer, and the Borough Solicitor. (ECF No. 16-3). When an action is commenced with a Praecipe for Writ of Summons, the Pennsylvania Rules of Civil Procedure require that it be served on each named defendant, providing notice that an action has been commenced, in the form provided by Pa.R.C.P. 1351. To provide notice, Pennsylvania Rule of Civil Procedure 401(a) provides that "[o]riginal process shall be served within the Commonwealth within thirty days after the issuance of the writ." If not served within thirty days, "the prothonotary upon praecipe and upon presentation of the original process, shall continue its validity by reissuing the writ … by writing thereon 'reissued' in the case of a writ." Pa.R.C.P. 401(b)(1). The state court docket reflects that that the writ was not served on any named Defendant within thirty days and was never reissued. (ECF No. 16-3).

Plaintiff concedes that service of the writ did not occur within thirty days. Plaintiff states instead that "[t]he original complaint and service in this matter was filed by the Plaintiff on July 14, 2014 ... In an attempt to effect service of the original complaint, Plaintiff effected service by first-class mail." (ECF No. 32, p. 10). Pennsylvania does not permit service of a complaint on Pennsylvania residents by mail; rather, except in situations not implicated here, Rule 400(a) provides that "original process shall be served within the Commonwealth only by the sheriff."

Pa.R.C.P. 400(a).   Further, if mailing could somehow be construed as appropriate, "under

Pennsylvania Rule of Civil Procedure 403, service of process by mail requires that a copy of the

summons and the complaint be mailed to an individual by any form of mail requiring a receipt

signed by the individual or the individual's authorized agent. Pa. R.C.P. 403."  Barkley v.

Westmoreland Cnty. Children's Bureau, No. 11-CV-00983, 2012 WL 4482542, at *2 (W.D. Pa.

Sept. 26, 2012).   Receipts evidencing delivery of the Complaint were not filed on the state

docket of this matter.

On August 14, 2014, Thomas Bush, the Borough of Brownsville, Lester J. Ward, Jack J.

Lawver, James S. Lawver, Ross T. Swords, Jr, John T. Hosler, Charles B. Perkins and Edward E.

Nicholson ("the Borough of Brownsville Defendants")  filed a Notice of Removal pursuant to 28

U.S.C. § 1441(a) and (b) and 42 U.S.C. § 1983, removing Plaintiff's action to this Court, and

citing Plaintiff's assertion of federal claims as the basis for subject matter jurisdiction.  On

August 20, 2014, the Borough of Brownsville Defendants filed a Motion to Dismiss, challenging

Plaintiff's failure to effect service of process on any Defendant as a bar to this Court's exercise

of personal jurisdiction, and contending that Plaintiff's claims are barred by the statute of

limitations and are otherwise legally insufficient.  (ECF No. 2).

Thereafter, on September 15, 2014, Plaintiff filed an Amended Complaint (ECF No. 12),

adding Defendants Ryan, individually and in her capacity as a Borough of Brownsville Council

Member, and Davis & Davis, Attorneys at Law, in its official capacity as Appointed Solicitor of

the Borough of Brownsville, Pennsylvania ("Davis & Davis"). The docket reflects that the

Plaintiff has not effectuated service of the Amended Complaint on the newly named Defendants

in accordance Rule 4 of the Federal Rules of Civil Procedure or, for that matter, on any named

Defendant.

The Borough of Brownsville Defendants and Defendant Ryan filed a renewed Motion to Dismiss Plaintiff's Amended Complaint (ECF Nos. 15, 22), which has been joined by Defendants Davis & Davis and Melinda K. Dellarose ("Dellarose") (ECF No. 17).  This second Motion to Dismiss again challenges personal jurisdiction over all named Defendants based upon the Plaintiff's failure to effect service and raises the legal sufficiency of all claims asserted by Plaintiff.  Plaintiff has filed a Response and Brief in Opposition (ECF Nos. 24, 26), to which the Borough of Brownsville Defendants have filed a Reply (ECF No. 29).  Defendants Davis and Davis and Dellarose have filed a Motion to Join in Relief requested by the Borough of Brownsville Defendants (ECF No. 30), and Plaintiff has filed a Response to the Borough of Brownsville Defendants' Reply (ECF No. 32). All of the pending motions are ripe for disposition.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(5)

Pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, the court may dismiss a case for "insufficiency of service of process." Fed. R. Civ. P. 12(b)(5). "The party asserting the validity of service bears the burden of proof on that issue. That party must do so by a preponderance of the evidence using affidavits, depositions, and oral testimony." Jackson v. Davis, No. 13-CV-1717, 2014 WL 3420462, at *8 (W.D. Pa. July 14, 2014)(quoting Grand Entm't Group, Ltd. v. Star Media Sales, Inc. 988 F.2d 476, 488 (3d Cir. 1993) and State Farm Mut. Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg, 543 F. Supp.2d 424, 428 (E.D. Pa. 2008); Villanova v. Solow, No. 97–6684, 1998 WL 643686, at *1 (E.D. Pa. Sept. 18, 1998)).

**B. Rule 12(b)(6)**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Eid v. Thompson, 740 F.3d 118, 122 (3d Cir.2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). Although the court must accept the allegations in the complaint as true, "[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)). In addition, merely pleading facts consistent with liability is not sufficient; the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. Twombly, 550 U.S. at 570.

Generally, a district court may not consider matters outside of the Complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). An exception to this rule exists whereby courts may consider, for Rule 12(b)(6) purposes: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

Through their Motions to Dismiss, Defendants contend that all of Plaintiff's claims are barred by applicable statutes of limitations. Statute of limitations is an affirmative defense which is typically raised in an answer. Fed.R.Civ.P. 8(c)(1). Additionally, "the limitations defense may be raised on a motion under Rule 12(b)(6) ... if 'the time alleged in the statement of the claim shows that the cause of action has not been brought within the statute of limitations.'" Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir.1975)). Accordingly, Defendants' reliance on the statute of limitations shall be considered to the extent the Amended Complaint and documents of public record establish that Plaintiff's causes of action against the named Defendants have not been brought within the applicable limitations period for each of his claims. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

## III.     DISCUSSION

### A.  Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(5) permits dismissal of a complaint when a plaintiff fails to effect service of process in a fashion compliant with Rule 4. This is not a mere technicality, for "[t]he failure of a plaintiff to obtain valid process from the court" deprives the court of personal jurisdiction over the defendant and "is fatal to the plaintiff's case." Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996). Thus, if the complaint has not properly been served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice or order that service be made. Fed. R. Civ. P. 4(m). A careful review of the docket of this matter establishes that as a result of Plaintiff's failure to properly serve any Defendant, this Court lacks personal jurisdiction over any Defendant.

Preliminarily, the Court notes that Plaintiff has been represented by counsel at all stages of this proceeding. As the party responsible for effecting service, Plaintiff also has the burden of proof to demonstrate validity of service. Rice v. Sniezek, No. 10-CV-2636, 2012 WL 3643191, at *3 (M.D. Pa. Aug. 23, 2012), citing Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).

Plaintiff concedes that prior to the removal of his action to this Court, he failed to serve any Defendant in compliance with the Pennsylvania Rules of Civil Procedure.[2] Instead, Plaintiff relies upon signed statements of a process server, dated November 2, 2014, to establish this Court's jurisdiction over all Defendants.[3] (ECF No. 26, p. 14). Plaintiff also points to Defendants' Motions to Dismiss and written consent to the jurisdiction of a United States Magistrate Judge as evidence of Defendants' waiver of objections to personal jurisdiction.

Regardless of whether the Defendants were contacted by other means so as to put them on notice of Plaintiff's action, it is well-established that "notice cannot by itself validate an otherwise defective service." Grand Entm't Group, 988 F.2d at 492. Further, the filing of a

---

[2] See, Pa.R.C.P. No. 401, which provides as follows:

> (a) Original process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint.
>
> (b)(1) If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule or outside the Commonwealth within the time prescribed by Rule 404, the prothonotary upon praecipe and upon presentation of the original process, shall continue its validity by reissuing the writ or reinstating the complaint, by writing thereon "reissued" in the case of a writ or "reinstated" in the case of a complaint.

[3] In particular, Plaintiff argues: "In the instant case the complaint was filed on September 15, 2014, therefore service must be made on or before January 14, 2015. Plaintiff having completed service of the Amended Complaint, Moving Defendants' insufficient service of process defense is now moot."

motion to dismiss challenging jurisdiction and raising supplemental grounds for dismissal is not a waiver of any jurisdictional defenses. Fed. R. Civ.P. 12(g)(1), 12(h). Similarly, consenting to the use of a United States Magistrate Judge to conduct any or all proceedings pursuant to 28 U.S.C. § 636, et seq., does not constitute a waiver of objections to the Court's personal jurisdiction.

Pursuant to Rule 4, "[t]he issuance of a summons signed by the Clerk, with the seal of the Court, and the time designated within which defendant is required to appear and attend, are essential elements of the court's personal jurisdiction over the defendant. 'A summons is process because its service subjects the person served to the court's jurisdiction, which is necessary to validate a judgment that the court might render against the person.'" Ayres, 99 F.3d at 568, quoting Fed. R. Civ. P. 4, 28 U.S.C.A. Practice Commentary C4–4 (1992 & Supp.1996).

Thus, dismissal is appropriate where a plaintiff fails to show that he served each defendant with a signed, sealed summons, and also fails to demonstrate good cause for failing to comply with the rules requiring service. Mathies v. Silver, 450 F. App'x 219, 222 (3d Cir. 2011). See also, Hankins v. Pennsylvania, 526 F. App'x 164, 167 (3d Cir. 2013); Bouchard v. U.S. Airways, No. 10-1381, 2012 WL 28225, at *1 (W.D. Pa. Jan. 5, 2012); Demos v. President of U.S., 365 F. App'x 341, 342 (3d Cir. 2010); Thakar v. Tan, 372 F. App'x 325, 330 (3d Cir. 2010).

In assessing whether good cause exists to deny Defendants' Motions to Dismiss and to perhaps extend the time for service under Rule 4(m), the Court considers the following factors: (1) the reasonableness of the plaintiff's efforts to effectuate service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and (4) whether the statute of limitations will bar the plaintiff's claims if the action is

dismissed. Mathies v. Silver, 450 F. App'x 219, 222 (3d Cir. 2011). In weighing the factors, the Court is mindful that good cause is equated with the concept of excusable neglect, "which requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." Id., quoting MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir.1995).

As to the first factor, Plaintiff has never attempted to comply with the Pennsylvania or Federal Rules of Civil Procedure to effectuate service; therefore, there can be no finding of reasonableness. Plaintiff simply cites to the unsworn affidavits of a process server and broadly states that he "completed service of the Amended Complaint on November 3, 2014, to render Moving Defendants' insufficient service of process defense moot." (ECF No. 21, p. 10). While it is true that the originally named Borough of Brownsville Defendants may have received general notice of an action filed against them, Plaintiff's attempted service over six months later was not accompanied by a Court-issued summons and was never entered on the docket of this matter. Plaintiff has not provided any basis for noncompliance with the applicable rules and so this factor weighs against him.

As to the second factor, in terms of prejudice suffered by the Defendants, it is evident that Plaintiff has needlessly caused the delay of this case to the prejudice of all Defendants. Plaintiff's Amended Complaint makes clear that he seeks to re-litigate code enforcement issues related to his blighted property dating from at least as long ago as 2002, as well as a myriad of issues related thereto, all of which he has been acutely aware since at least 2005-2007. His failure to serve the original writ issued in March 2014 delayed Defendants' knowledge of the nature of Plaintiff's claims asserted against them until July 2014, when the original Complaint was filed. Not only is this delay beyond most associated statutes of limitations, Defendants only received

notice of Plaintiff's claims upon issuing and serving a Praecipe to File a Complaint in state court in May 2014. Plaintiff failed to timely respond, requiring Defendants to file a Ten Day Notice of Intention to Enter Judgment of Non Pros. (ECF No. 16-3). Only after receipt of the Ten Day Notice did Plaintiff finally file a complaint in the state court action. And, even then, Plaintiff did not serve the Complaint on any Defendant, nor seek reissuance of the original writ. Accordingly, because of the delay and expense incurred to learn the nature of Plaintiff's claims, this factor weighs against Plaintiff.

As to the third factor, at no point has Plaintiff requested an extension of time from this Court to comply with Rule 4 of the Federal Rules of Civil Procedure, so the third factor weighs against Plaintiff.

The fourth factor requires an assessment of the effect of dismissal on the relevant statute of limitations. All of Plaintiff's constitutionally based claims are subject to Pennsylvania's two-year statute of limitations. Plaintiff's claim of unjust enrichment is subject to a four-year statute of limitations, as is his civil RICO claim. As more fully set forth *infra*, Plaintiff's constitutional and civil RICO claims were time-barred long before he commenced this action in state court. Plaintiff's unjust enrichment claim, to the extent it arose upon the RACF's publication of an RFP in 2013, is not time barred, but suffers grounds for dismissal as it is directed at the wrong parties and is otherwise legally insufficient. Accordingly, there are no equitable considerations bearing on the propriety of dismissal, so as to suggest that a further extension be granted to permit Plaintiff to obtain a properly issued summons and to serve the Amended Complaint. Accordingly, the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) will be granted.

**B. 12(b)(6) Challenges**

Defendants assert numerous other grounds for dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). These arguments are considered in seriatim.

**1. Statute of Limitations**

The viability of Plaintiff's action turns, *inter alia*, on whether the applicable statute of limitations bars those claims that are properly asserted against Defendants. Plaintiff seeks compensation pursuant to 42 U.S.C. § 1983 for the alleged violation of his civil rights, as well as the recovery of damages pursuant to the RICO civil remedy provisions set forth in 18 U.S.C. § 1964(c).[4]

Section 1983 of the Civil Rights Act is not itself a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989); Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979). Congress has not codified a statute of limitations applicable to § 1983 suits and has instead "determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law." Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 602 (3d Cir. 2015) (quoting Hardin v. Straub, 490 U.S. 536, 538 (1989); see also 42 U.S.C. § 1988." "[A] § 1983 claim is governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." Kach v. Hose, 589 F.3d 626, 639 (3d Cir. 2009)). Because Plaintiff's § 1983 claims arise in Pennsylvania, the Court must apply Pennsylvania's

_____

[4] Plaintiff also asserts a state law claim for unjust enrichment; however, as more fully set forth *infra*, Plaintiff has not asserted a viable claim for unjust enrichment against any named Defendant.

statute of limitations. Under Pennsylvania law, personal injury claims must be brought within two years of the accrual of the claim. 42 P.S. § 5524(7).

Federal law governs the accrual date of a cause of action under § 1983, <u>Kach</u>, 589 F.3d at 639. (citing <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 919 (3d Cir.1991)). The accrual period for statute of limitations purposes begins when a plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action. <u>Sameric Corp. of Delaware v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998). The "discovery rule," recognized by Pennsylvania law, tolls the statute of limitations period when a plaintiff is unable, "despite the exercise of due diligence," to know of the injury or its cause. <u>Mest v. Cabot Corp.</u>, 449 F.3d 502, 510 (3rd Cir. 2006) (citing <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 468 A.2d 468, 471 (1983)). The tolling continues until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." <u>Mest</u>, 449 F.3d at 510 (citing <u>Debiec v. Cabot Corp.</u>, 352 F.3d 117, 129 (3rd Cir. 2003)).

Civil RICO claims are subject to a four year statute of limitations. <u>Rotella v. Wood</u>, 528 U.S. 549 (2000). The United States Court of Appeals for the Third Circuit has held that the statute of limitations for civil RICO claims accrues when the Plaintiff discovers, or should have discovered, his injury. <u>Forbes v. Eagleson,</u> 228 F.3d 471, 484 (3d Cir. 2000). Any conduct alleged to fall within the statute of limitations must also be attributable to the named defendants and set forth a predicate for civil RICO liability.[5] <u>Egnotovich v. Greenfield Twp. Sewer Auth.</u>,

---

[5] To state a civil RICO claim, a plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (d) of racketeering activity. <u>See</u> <u>Lum v. Bank of America</u>, 361 F.3d 217, 223 (3d Cir. 2004). A "pattern of racketeering activity" requires "at least two acts" of conduct indictable under various enumerated federal criminal statutes. 18 U.S.C. § 1961(1), (5).

No. 05-1818, 2006 WL 1094549, at *3 (M.D. Pa. Apr. 25, 2006) *aff'd*, 304 F. App'x 94 (3d Cir. 2008).

Although it is apparent that Plaintiff has filed this action at least a decade after his claims arose, Plaintiff argues that he did not discover his injury until the "triggering event" which occurred when the RACF, a non-party, "with [unspecified] Defendants" released its RFP on March 7, 2013. Plaintiff contends that the March 2013 RFP placed the prior decade in context and apprised him for the first time that he had suffered civil rights and RICO violations. Plaintiff argues that because he filed his writ in March 2014 and his Amended Complaint in September 2014, the discovery rule renders his lawsuit timely. Plaintiff's argument, however, is not well founded.

First, as to Plaintiff's civil RICO claim, given Plaintiff's allegation that a non-party, the RACF, issued the RFP, Plaintiff's failure to allege the "who, what, where, when, and how" with regard to any named Defendant's alleged participation in the use of Plaintiff's marketing plan renders his RICO claim wholly speculative and unsustainable as to all Defendants. (ECF No. 12, ¶ 145). Iqbal, 556 U.S. at 678.

Second, based upon the allegations in the Amended Complaint, Plaintiff cannot reasonably dispute that he: (1) knew of the disparate treatment with regard to the enforcement of building codes and imposition of fines against him since at least 2001 (ECF No. 12, ¶¶ 47, 49, 52, 56, 64, 219); (2) knew of alleged issues related to the qualifications of Code Enforcement Officers and the application of allegedly expired maintenance codes since 2001 or 2003 (ECF No. 12, ¶¶ 46, 51, 100); (3) was aware of an alleged conspiracy to take his property and/or prevent his development of it since 2003 or 2006 (ECF No. 12, ¶¶ 95, 151); (4) was subject to alleged intimidation through certain Defendants' failure to respond to requests for police

assistance since 2003 (ECF No. 12, ¶ 85); (5) suffered alleged threats of imprisonment for code

violations since 2006 (ECF No. 12, ¶¶ 151, 165); (6) suffered alleged retaliation against him for

challenges to code enforcement since 2007 (ECF No. 12, ¶ 86(e)); (7) suffered the demolition of

certain of Plaintiff's properties without "any court order hearing or due process" in 2006 (ECF

No. 12, ¶ 159); (8) was aware of the RACF's intent to interfere with his development plan since

at least 2006 or 2007, when it ordered the demolition of a building that "Defendants" knew was a

key property in his portfolio," and otherwise interfered with Plaintiff's plans to develop the

Brownsville business and waterfront district (ECF No. 12, ¶ 159).[6] This litany of conduct alleged

to have begun in 2001-2002, and occurring through June 2010, when Plaintiff decided to cede

ownership of all property in an upset tax sale in June 2010, should have triggered Plaintiff's

awareness and duty to assert his rights in a timely fashion. Budzash v. Howell Twp., 451 F.

App'x 106, 110 (3d Cir. 2011).

With regard to Plaintiff's civil rights claims, a detailed review of the 222 paragraph

Amended Complaint establishes that the last affirmative act of any named Defendant occurred

on March 8, 2012, when Defendant Nicholson allegedly reissued a citation against Plaintiff

related to his failure to maintain his property. (ECF No. 12, ¶ 200). However, this citation, along

with all remaining citations, was withdrawn on or about April 27, 2012. (ECF No. 12, p. 53).

To the extent the reissuance of a citation comprises a violation of Plaintiff's constitutional rights,

Plaintiff was required to properly commence legal action no later than April 27, 2014.

However, as discussed *supra*, Plaintiff stalled the judicial process by failing to serve the

March 2014 writ of summons, and by failing to file a complaint providing notice of his claims

---

[6] Again, the RACF is not a party to this litigation, nor are any of the individuals named in
Plaintiff's Amended Complaint identified as board members or employees of the RACF.

until July 2014. Further, while it appears that Defendants had notice of the state court action on May 19, 2014, when Defendants filed a Rule to File Complaint to determine the nature of Plaintiff's claims, Plaintiff delayed until July 14, 2014, to file his Complaint and then only did so in response to the Brownsville Borough Defendants' Ten Day Notice to Enter Judgment of Non Pros. (ECF 16-3, p. 3). This conduct renders any § 1983 cause of action arising out of the citation issued on March 8, 2012, time-barred by the applicable two-year statute of limitations. McCreesh v. City of Philadelphia, 888 A.2d 664, 674 (Pa. 2005) (statute of limitations defense may be preserved after the issuance of an unserved writ, where plaintiff has demonstrated an intent to stall the judicial machinery or where plaintiff's failure to comply with the Pennsylvania Rules of Civil Procedure has prejudiced defendant).

Plaintiff's civil RICO claim, while otherwise legally insufficient, is equally time-barred. Plaintiff seeks to avoid this clear result by stating that until the "triggering event" in March 2013, he "believed that defendants' wanted to take his property, but after the Triggering Event the Defendant's scheme was revealed." (ECF No. 26, p. 27)(sic). This assertion contradicts Plaintiff's description of "The Pattern of Racketeering Activity" in his Amended Complaint, (ECF No. 12, p. 59), where Plaintiff cites the issuance of 145 citations (from 2005 to 2009 (ECF No. 12, ¶ 179)), and intimidation and threats as predicate acts "committed in furtherance of the scheme." Id. Given Plaintiff's legal challenges to these "predicate" acts beginning in 2004 and 2005 (ECF No. 12, ¶¶ 116, 122, 151), it is unreasonable to claim ignorance of his injury until 2013.

Similarly, to the extent RACF's 2013 conduct "triggered" notice of a "scheme," Plaintiff knew or should have known of his injury at the latest in 2006, when Plaintiff alleges the "RACF retaliated" and ordered the demolition of the Margave building, a key property in his portfolio, in

an "attempt to financially cripple plaintiff and interfere with his development plan." (ECF No. 159). Forbes v. Eagleson, 228 F.3d at 484, and see, Schneler v. Zitomer, No. 13-4370, 2015 WL 115569, at *6 (E.D. Pa. Jan. 8, 2015).[7] Accordingly, because Plaintiff commenced this action well beyond the applicable statute of limitations for any RICO and § 1983 claim, Plaintiff's claims are dismissed with prejudice.

### 2. Civil RICO claims

In addition to any statute of limitations defense, Defendants contend that the factual allegations supporting Plaintiff's civil RICO claims are insufficient as a matter of law. The Court agrees that Plaintiff fails to articulate facts establishing any required predicate acts of fraud, extortion, or bribery and, therefore, Plaintiff has not adequately pled critical elements of his RICO claims.

---

[7] The Court finds Plaintiff's claims of delayed knowledge unreasonable, given his participation in state court litigation commenced in January 2009, arising out of the issuance of citations for Code violations. In the state court action, Plaintiff stated that "his incentive [to rectify defective conditions for which he was cited] was taken away and that he lost faith in the system, believing that the Borough was "gunning for [him]." Com. v. Liggett, No. 639 C.D. 2010, 2011 WL 10843692, at *5 (Pa. Commw. Ct. May 19, 2011), citing Liggett Br. at 21–22.

Similarly, no later than June 16, 2010, Plaintiff challenged the RACF's eminent domain proceedings, which commenced on June 3, 2009, when Plaintiff alleged the existence of a scheme to take his property in furtherance of RACF's own development project. The procedural history is briefly summarized in a decision of the Commonwealth Court of Pennsylvania, where the Court notes that Plaintiff objected to the use of eminent domain, alleging "de facto takings of properties as a result of the condemnations because [the RACF] acquired the subject properties in order to assemble a large parcel of land to be used for commercial development. Landowners argued that the condemnation proceedings would destroy the assembled parcel and make it impossible for them to utilize it as a unified commercial development." Alpha Fin. Mortgage, Inc. v. Redevelopment Auth. of Fayette Cnty., No. 1596 C.D. 2011, 2012 WL 8687702, at *1 (Pa. Commw. Ct. May 10, 2012).

The United States Court of Appeals for the Third Circuit has explained the statutory framework for asserting civil RICO claims:

> The RICO statute authorizes civil suits by "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c) (1988). Section 1962 contains four separate subsections, each addressing a different problem. Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that money to acquire, establish or operate any enterprise that affects interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise "through a pattern of racketeering activity." Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conduct[ing] or participat[ing] ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." Finally, section 1962(d) prohibits any person from "conspir[ing] to violate any of the provisions of subsections (a), (b), or (c)."

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991). In this case, Plaintiff contends that "Defendants corruptly endeavored to influence, obstruct or impede due administration of justice for Plaintiff …. [and] corruptly attempted to persuade others to obstruct, influence, or impede administration of justice for Plaintiff." (ECF No. 26, p. 29). However, Plaintiff's allegations do not allege any qualifying predicate acts upon which a claim for civil RICO may be stated.

The RICO statute defines "racketeering activity" to include, inter alia, acts that are indictable under 18 U.S.C. § 201 (relating to bribery), 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), 18 U.S.C. § 1503 (relating to obstruction of justice) and 18 U.S.C. § 1512 (relating to witness tampering). See 18 U.S.C. § 1961(1). Sarpolis v. Tereshko, No. CIV.A. 13-5521, 2014 WL 2765088 (E.D. Pa. June 17, 2014). Further, each subsection of 18 U.S.C. § 1962 requires the existence of a "pattern of racketeering activity." The statute defines a "pattern of racketeering activity" as requiring the commission of at least two

predicate offenses listed in 18 U.S.C. § 1961(1). See Kehr Packages, 926 F.2d at 1412, citing 18 U.S.C. § 1962(5).

Plaintiff contends that he has alleged "obstruction of justice." (ECF No. 26, p. 29-30)("[p]ursuant to and in furtherance of their racketeering activities, the Defendants committed multiple related acts of obstruction of justice."). However, the United States Court of Appeals for the Third Circuit recently affirmed the dismissal of a RICO claim predicated upon the submission of false affidavits and destruction of evidence related to plaintiff's case, stating that "we have never recognized obstruction of justice as a viable RICO predicate except in cases involving witness intimidation." CollegeSource, Inc. v. AcademyOne, Inc., No. 12-4167, 2015 WL 469041, at *7 (3d Cir. Feb. 5, 2015). Plaintiff does not allege witness intimidation in this action and, accordingly, has not stated a claim for "obstruction of justice."

In addition, Plaintiff has not alleged a "pattern" of racketeering. To plead a pattern of racketeering activity, Plaintiff must allege not only that each Defendant "committed at least two acts of prohibited racketeering activity, but also that the predicate acts are related and that they amount to or pose a threat of continued criminal activity." Hollis-Arrington v. PHH Mortgage Corp., 205 F. App'x 48, 54 (3d Cir. 2006). Plaintiff's Amended Complaint, however, does not allege facts identifying the conduct of any individually-named Defendant establishing that he or she committed a prohibited racketeering activity that poses a threat of criminal activity. In the absence of the "who, what, where, when and how," Plaintiff's Amended Complaint does not allege facts sufficient to state a civil RICO claim upon which relief may be granted.

### 3. Unjust Enrichment

Plaintiff also fails to state a plausible claim for unjust enrichment. Under Pennsylvania law, the elements of unjust enrichment are: "(1) a benefit conferred on the defendant by the

plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir. 2010) (citing AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001)).

Plaintiff has not alleged any facts showing that any named Defendant accepted or retained a benefit afforded by his redevelopment and marketing plans. Rather, Plaintiff's Amended Complaint alleges that in 2013, the "*RACF* released a Request for Proposals (RFP) a solicitation for the redevelopment of the downtown Brownsville historical district. The *RFP issued by RACF* utilizes plaintiff's development plans, marketing plan and marketing materials." (ECF No. 12, ¶ 145)(italics added). There are no facts alleged establishing that any of the individually named Defendants benefitted in any way from Plaintiff's plan. Plaintiff merely speculates that Defendants have obtained a benefit because the RACF, a third-party to this litigation, allegedly used his plans in the RFP. Such speculation does not state a plausible claim. See e.g. Barbieri v. Wells Fargo & Co., No. CIV.A. 09-3196, 2014 WL 7330461, at *13 (E.D. Pa. Dec. 22, 2014), dismissing unjust enrichment claim for failure to allege sufficient facts establishing the conferral of a benefit, *and citing* Twombly, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"); Haber v. Bank of Am., N.A., No. 14–169, 2014 WL 2921659 (E.D. Pa. June 27, 2014) ("Rule 12(b)(6) requires plausibility, not mere speculation."). Accordingly, Defendants' Motion to Dismiss Plaintiff's unjust enrichment claim is granted.

### 4. Judicial Estoppel

Defendants invoke the doctrine of judicial estoppel and argue that dismissal of all claims is appropriate based upon Plaintiff's failure to alert the United States Bankruptcy Court of his contingent § 1983, civil RICO, and unjust enrichment claims while seeking Chapter 7 bankruptcy relief. The docket of the bankruptcy matter establishes that Plaintiff filed his bankruptcy petition on September 29, 2012, in the United States Bankruptcy Court for the Western District of Pennsylvania at No. 12-BK-24879. Plaintiff obtained relief in the form of an order discharging Plaintiff's debts on July 11, 2014, some four months *after* he commenced this litigation. Through bankruptcy, it appears that Plaintiff may have obtained relief from judgment liens arising out of debts incurred for property subject to eminent domain proceedings and at issue here. (See, In re Ernest E. Liggett, No. 12-BK-24879, ECF No. 16-2, pp. 6, 9, 22, 23).

Plaintiff responds that the omission of his current claims was not deliberate and therefore he should not be barred from pursuing recovery. Further, Plaintiff states that Defendants' Motion to Dismiss on the basis of judicial estoppel is moot because the Bankruptcy Court issued a Notice of Need to File Proof of Claim Due to Recovery of Assets, on October 12, 2014, indicating that "property in the estate is available or may become available for distribution to creditors." (ECF No. 32-1).

Under the doctrine of judicial estoppel, "a plaintiff, who has obtained relief from an adversary by asserting and offering proof to support one position, may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention." Krystal Cadillac–Oldsmobile GMC Truck Inc. v. General Motors Corp. & General Motors Acceptance Corp., 337 F.3d 314, 319 (3d Cir. 2003) Three factors must be considered to justify the application of the doctrine of judicial estoppel:

"First, the party to be estopped must have taken two positions that are irreconcilably inconsistent; second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith; and third, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Id.

In J.H. Grp., LLC v. Royal Rolling Chairs, LLC, 523 F. App'x 922, 924 (3d Cir. 2013), the United States Court of Appeals for the Third Circuit reviewed the District Court's application of these factors and held that judicial estoppel was properly invoked where a bankruptcy petition did not disclose the existence of plaintiff/debtors' unliquidated § 1983 claim. The District Court identified the nature and frequency of inconsistencies in the bankruptcy proceeding and determined that plaintiffs had demonstrated bad faith, given that the civil claims were "the impetus to filing for bankruptcy." Id. In addition, the Court found that where a party has an undisclosed claim and a motive to shield assets, the defense of ignorance or inadvertence will not preclude application of the judicial estoppel doctrine. Id.

While it is apparent that a similar pattern of conduct is present in this case, and that application of estoppel appears appropriate, it would be imprudent to resolve the issue on the pleadings at such an early stage of the litigation, and without a hearing. "'[A] district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes ...[however,] a court considering the use of judicial estoppel should ensure that the party to be estopped has been given a meaningful opportunity to provide 'an explanation' for its changed position.'" Jackson v. WellSpan Health, No. 1:13-CV-1349, 2014 WL 414251, at *6 (M.D. Pa. Feb. 4, 2014), quoting Cleveland v. Policy Management Sys., 526 U.S. 795, 807 (1999).

In the instant action, given the absence of a complete record on the issue of estoppel, and given the disposition of Defendants' Motion to Dismiss for lack of personal jurisdiction, the applicable statutes of limitations, and the insufficiency of Plaintiff's claims as a matter of law, the Court declines to rule on the Motion to Dismiss on the basis of judicial estoppel.

## IV.    CONCLUSION

For the foregoing reasons, the Motions to Dismiss filed on behalf of all named Defendants (ECF Nos. 15, 17, 22, 30) are granted.  In particular, the Court finds that as a result of Plaintiff's failure to effect service on any named Defendant in accordance with either the Pennsylvania Rules of Civil Procedure or the Federal Rules of Civil Procedure, this Court lacks personal jurisdiction over any named Defendant and, accordingly, Defendants' Motion to Dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure is granted.

In addition, because the allegations of Plaintiff's Amended Complaint make clear that Plaintiff's equal protection and due process claims (and any other claims grounded in the United States Constitution) (Counts I and II), as well as Plaintiff's civil RICO claims (Count III), are barred by applicable statutes of limitations, the Defendants' Motion to Dismiss Counts I and II pursuant to Rule 12(b)(6) is granted.

Further, because Plaintiff has not alleged facts sufficient to state a legally cognizable claim against any named Defendant for civil RICO violations or unjust enrichment, Defendants' Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint is granted.

Finally, because the facts alleged in Plaintiff's Amended Complaint unequivocally establish that any further efforts to amend would be futile, given the dismissal of claims as time-barred, and the inability to assert a claim against the named Defendants for unjust enrichment, Plaintiff's request for leave to amend is denied and the Amended Complaint is dismissed with

prejudice. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir.2002); Warner v. B. Pietrini & Sons Const., 588 F. App'x 106, 108 (3d Cir. 2015).  The docket of this matter shall be marked closed.


## ORDER


AND NOW, this 12th day of May, 2015, upon consideration of the Motion to Dismiss Plaintiff's Amended Complaint filed on behalf of Defendants Borough of Brownsville, Brownsville Borough Code Enforcement Officer, Edward E. Nicholson, Brownsville Borough Mayor, Lester J. Ward, Borough of Brownsville Council Members Jack J. Lawver, Thomas Bush, John T. Hosler, James S. Lawver, Charles B. Perkins, Ross T. Swords, Jr., Tracey Zivlovich, and Norma J. Ryan (ECF No. 15, 22), which has been joined by Defendants Davis & Davis and Melinda K. Dellarose ("Dellarose") (ECF No. 17, 30), and the briefs and exhibits filed in support and in opposition thereto, and for the reasons set forth in the accompanying opinion,

IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure is GRANTED;

IT IS FURTHER ORDERED THAT the Defendants' Motion to Dismiss Counts I , II, III and IV pursuant to Rule 12(b)(6) is granted;

IT IS FURTHER ORDERED THAT Plaintiff's request for leave to amend is DENIED; and,

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE



cc:     All counsel of record by Notice of Electronic Filing